1   Robert B. Hawk (Bar No. 118054)
    HOGAN LOVELLS US LLP
2   4085 Campbell Avenue, Suite 100
    Menlo Park, CA  94025
3   Telephone:  (650) 463-4000
    Facsimile:  (650) 463-4199
4   robert.hawk@hoganlovells.com

5   Dennis H. Tracey, III (admitted *pro hac vice*)
    Derek Musa (admitted *pro hac vice*)
6   HOGAN LOVELLS US LLP
    875 Third Avenue
7   New York, NY 10022
    Telephone:  (212) 918-3000
8   Facsimile:  (212) 918-3100
    dennis.tracey@hoganlovells.com
9   derek.musa@hoganlovells.com

10  Attorneys for Defendants
    BIOTECHNOLOGY VALUE FUND, L.P.,
11  BIOTECHNOLOGY VALUE FUND II, L.P.,
    INVESTMENT 10, L.L.C.
12  MSI BVF SPV, LLC,
    BVF INC., and
13  MARK N. LAMPERT

14

15                  **UNITED STATES DISTRICT COURT**

16                 **NORTHERN DISTRICT OF CALIFORNIA**

17                    **SAN FRANCISCO DIVISION**

18

19  BRAIN AND ZACHARY SAND JOINT          Case No. 3:16-cv-1313-RS
    TRUST,
20
                  Plaintiff,               **BVF DEFENDANTS' NOTICE OF**
21                                          **MOTION AND MOTION TO**
          v.                                **DISMISS**
22
    BIOTECHNOLOGY VALUE FUND, L.P., et     Hearing Date:  October 27, 2016
23  al.,
                                            Time:  1:30 p.m.
24                Defendants.
                                            Courtroom:   3
25
26                                          The Hon. Richard Seeborg
27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### NOTICE OF MOTION AND MOTION

**TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** Defendants Biotechnology Value Fund, L.P. ("BVF") and Biotechnology Value Fund II, L.P. ("BVF2" and, together with BVF, the "BVF Funds"), Investment 10, L.L.C. ("INV10") and MSI BVF SPV, LLC ("MSI" and, together with INV10, the "Managed Accounts"), BVF Partners, L.P. ("BVF Partners"), BVF Inc., and Mark N. Lampert (collectively, the "BVF Parties") will, and hereby do, move to dismiss the Complaint filed in this matter.  Hearing on this motion will be held on **October 27, 2016** at **1:30 p.m.** at San Francisco Courthouse, Courtroom 3, 17th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, the Honorable Richard Seeborg presiding.

The BVF Parties respectfully request that the Court dismiss the Complaint in its entirety with prejudice on the following bases:

1) Plaintiff has failed to state a plausible claim against the BVF Parties under Section 16(b) of the Securities Exchange Act of 1934 because it has not adequately alleged that any BVF Party became subject to Section 16(b) as a statutory insider; and

2) Plaintiff has failed to state a plausible claim against the BVF Parties under Section 16(b) of the Securities Exchange Act of 1934 because it has not adequately alleged any matchable purchase or sale of the issuer's securities for purposes of Section 16(b).

This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the BVF Parties' Request for Judicial Notice, and any other written and oral arguments that may be presented to the Court.

1

2

3  Dated: June 27, 2016                    HOGAN LOVELLS US LLP

4                                 By:    _____/s/ Robert B. Hawk_____
                                        Robert B. Hawk
5                                       HOGAN LOVELLS US LLP
                                        4085 Campbell Avenue, Suite 100
6                                       Menlo Park, CA  94025
                                        Telephone:  + 1 (650) 463-4000
7                                       Facsimile:  + 1 (650) 463-4199
                                        robert.hawk@hoganlovells.com
8
                                        Dennis H. Tracey, III
9                                       (admitted *pro hac vice*)
                                        Derek Musa
10                                      (admitted *pro hac vice*)
                                        HOGAN LOVELLS US LLP
11                                      875 Third Avenue
                                        New York, NY 10022
12                                      Telephone:  (212) 918-3000
                                        Facsimile:  (212) 918-3100
13                                      dennis.tracey@hoganlovells.com
                                        derek.musa@hoganlovells.com
14

15                                      *Attorneys for Defendants*
                                        *Biotechnology Value Fund, L.P.,*
16                                      *Biotechnology Value Fund II,*
                                        *L.P., Investment 10, L.L.C., MSI*
17                                      *BVF SPV, LLC, BVF Inc., and*
                                        *Mark N. Lampert*
18

19

20

21

22

23

24

25

26

27

28

ii

1

**STATEMENT OF ISSUES TO BE DECIDED**

2

**CIVIL L.R. 7-4(a)(3)**

3       1.       Should the Court dismiss Plaintiff's claim under Section 16(b) of the Securities

4    Exchange Act of 1934 ("Section 16(b)") as against defendants for whom Plaintiff fails

5    plausibly to allege statutory insider status as an officer, director or beneficial owner of more

6    than 10 percent of a class of registered equity securities of the issuer?

7       2.       Should the Court dismiss Plaintiff's Section 16(b) claim where the Plaintiff

8    fails plausibly to allege any matchable purchase or sale of the issuer's securities for purposes

9    of Section 16(b)?

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT..................................................................................... 1

SUMMARY OF ALLEGATIONS AND JUDICIALLY NOTICEABLE FACTS....................... 3

       A.    The Parties................................................................................. 3

       B.    The Challenged Purchases. ...................................................... 3

       C.    The Challenged Sales................................................................ 5

GOVERNING LAW AND STANDARD ON THIS MOTION..................................... 5

ARGUMENT ...................................................................................................... 6

    I.    Plaintiff Fails To State A Claim Because None of the BVF Parties
       Became a Statutory Insider Subject to Section 16(b)............................ 6

       A.    None of the BVF Parties, Individually, was a 10% Owner of
           the Company's Common Stock for Purposes of Section
           16(b) Liability. ...................................................................... 7

           1.    None of the BVF Funds or Managed Accounts,
               Individually, Owned Greater Than 10 Percent of the
               Company's Common Stock. ........................................... 7

           2.    Under the SEC Rule 16a-1(a)(1)(v) Investment
               Advisor Exemption, BVF Partners is Deemed Not to
               Beneficially Own Company Securities Held in the
               BVF Funds' Accounts or the Managed Accounts For
               Purposes of Determining its 10% Owner Status. ............ 8

               a)    Beneficial Ownership of Securities for
                   Purposes of Section 16(b) is Less Inclusive
                   than Beneficial Ownership for Purposes of
                   Section 13.......................................................... 8

               b)    BVF Partners Satisfies the Requirements of
                   the Investment Advisor Exemption.................................... 9

                   i.    The Securities were "Held for the Benefit of
                     Third Parties *or* in Customer *or* Fiduciary
                     Accounts."................................................... 10

                   ii.    The Securities were Acquired "Without the
                    Purpose or Effect of Changing or Influencing
                     Control of the Issuer."................................. 12

                   iii.  The Securities were Acquired Without Engaging
                     in any Arrangement Subject to Rule 13d-3(b). ............ 12

c)     Under SEC Rule 16a-1(a)(4), Statements in BVF Partners' Forms 4 are Not Indicative of its Beneficial Ownership of the Company's Common Stock for Purposes of Section 16. ..................... 13

3.     Under the SEC Rule 16a-1(a)(1)(vii) Control Person Exemption, BVF Inc. and Mr. Lampert are Deemed Not to Beneficially Own Securities Held by the BVF Funds or the Managed Accounts For Purposes of Determining Their 10% Owner Status. ......................................... 17

B.     Plaintiff Fails Adequately to Allege that any BVF Party Became a 10% Owner as a Member of a Section 13(d) "Group." .................................................................................. 18

1.     Shares Excludable by BVF Partners Under the Investment Advisor Exemption are Likewise Excludable by the Other BVF Group Members For Purposes of the 10% Owner Calculation. ..................................... 19

2.     Conversion Caps in the Series B and Series C Convertible Preferred Stock Prevented the BVF Parties From Reaching the 10% Owner Threshold Based on the Underlying Common Stock. ..................................... 20

3.     Because BVF Partners, BVF, Inc., and Mr. Lampert Did Not Beneficially Own Any Common Stock For Purposes of Determining Their 10% Owner Status, They Cannot Be Members of a Section 13(d) "Group." .................................................................................. 21

II.     Plaintiff Fails Adequately to Allege any Matchable "Sale" Within the Meaning of Section 16(b) .................................................................. 22

III.     Plaintiff Fails Adequately to Allege any Matchable "Purchase" Within the Meaning of Section 16(b) .................................................... 23

CONCLUSION .......................................................................................................... 24

v

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4
5
*Abrahamson v. Fleschner,*
   568 F.3d 862 (2d Cir. 1977), *overruled in part on other grounds by*
   *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11 (1979) ..........................................11

6
7
*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ...........................................................................................................6, 19

8
9
*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ....................................................................................................................17

10
11
*Chechele v. Hayne,*
   No. 2-11-cv-379, 2011 WL 2519522 (E.D. Pa. June 20, 2011) ...............................................23

12
*Chechele v. Morgan Stanley,*
   896 F. Supp. 2d 297 (S.D.N.Y. 2012)........................................................................................23

13
14
*Conley v. Gibson,*
   355 U.S. 41 (1957) .....................................................................................................................17

15
16
*Cullen v. Netflix, Inc.,*
   No. 5:11-cv-1199-EJD, 2013WL 140103 (N.D. Cal. Jan. 10, 2013).........................................6

17
*Decker v. Advantage Fund, Ltd.,*
   362 F.3d 593 (9th Cir. 2004)......................................................................................................21

18
19
*Donoghue v. Genomica Corporation,*
   No. 02-cv-110, 2003 WL 1609191 (S.D.N.Y. Mar. 7, 2003) .......................................14, 15, 16

20
*Dreiling v. AOL, Inc.,*
   578 F.3d 995 (9th Cir. 2009)........................................................................................................5

21
22
*Egghead.Com, Inc. v. Brookhaven Capital Mgmt. Co.,*
   340 F.3d 79 (2d Cir. 2003)................................................................................................ *passim*

23
24
*Goldstein v. SEC,*
   451 F.3d 873 (D.C. Cir. 2006) .............................................................................................10, 11

25
*Gollust v. Mendell,*
   501 U.S. 115 (1991) .....................................................................................................................7

26
27
*Levy v. Southbrook Int'l Invs., Ltd.,*
   263 F.3d 10 (2nd Cir. 2001)........................................................................................................21

28

*Morales v. Auspex Systems, Inc.*,
  00-cv-1173, 2001 WL 258502 (S.D.N.Y. Mar. 15, 2001)...................................................15, 16

*Morales v. Quintel Entm't, Inc.*,
  249 F.3d 115 (2d Cir. 2001)...................................................................................................14

*In re NVIDIA Sec. Litig.*,
  768 F.3d 1046 (9th Cir. 2014)..................................................................................................6

*Reliance Elec. Co. v. Emerson Elec. Co.*,
  404 U.S. 418 (1972)..................................................................................................................7

*Rosen v. Brookhaven Capital Mgmt. Co.*,
  113 F. Supp. 2d 615 (S.D.N.Y. 2000)...................................................................................19

*Rosenberg v. XM Ventures*,
  274 F.3d 137 (3d Cir.2001)...................................................................................................22

*Roth v. Goldman Sachs Grp., Inc.*,
  740 F.3d 865 (2d Cir. 2014)....................................................................................................7

*Roth v. Jennings*,
  489 F.3d 499 (2d Cir. 2007)............................................................................................10, 17

*SEC v. Capital Gains Research Bureau, Inc.*,
  375 U.S. 180 (1963)................................................................................................................10

*Strom v. U.S.*,
  641 F.3d 1051 (9th Cir. 2011).............................................................................................6, 23


**Statutes and Rules**

15 U.S.C. § 78p(a)(1)....................................................................................................................5

15 U.S.C. § 78p(b) ("Section 16(b)") ................................................................................. *passim*

17 C.F.R. § 240.d-3(d)(1)(i) ("Rule 13d-3").......................................................................... *passim*

17 C.F.R. § 240.13d-1(c) ("Rule 13d-1(c)")..........................................................................12, 13

17 C.F.R. § 240.13d-5(b)(1) ("Rule 13d-5(b)(1)") ........................................................................18

17 C.F.R. § 240.16a-1(a)(1) ("Rule 16a-1(a)(1)") ...................................................................... *passim*

17 C.F.R. § 240.16a-1(a)(4) ("Rule 16a-1(a)(4)") ...................................................................13, 14

Securities Exchange Act Section 12 ..............................................................................................5

Securities Exchange Act Section 13(d) .................................................................... *passim*

Investment Advisors Act of 1940 ........................................................................3, 10, 11

Federal Rule of Civil Procedure 12(b)(6) .........................................................................6

Cal. Corp. Code § 15904.08...........................................................................................11

**Other Authorities**

56 Fed. Reg. 7242 (Feb. 21, 1991) ("1991 Release") ........................................18, 20, 24

56 Fed. Reg. 35667 (Aug. 28, 1989)..............................................................................19

Peter J. Romeo & Alan L. Dye, *Section 16 Treatise and Reporting Guide* (4th ed. 2012) .... 14, 22

## PRELIMINARY STATEMENT[1]

Plaintiff alleges that the BVF Parties may have realized "some short-swing profits" subject to disgorgement under Section 16(b) of the Securities Exchange Act of 1934 ("Section 16(b)") from purported purchases of common stock underlying shares of convertible preferred stock, and sales of common stock of the issuer, and nominal defendant, Oncothyreon, Inc. ("Oncothyreon" or the "Company").  However, Plaintiff fails adequately to allege that the BVF Parties ever fell within the purview of Section 16(b) as statutory insiders.  Specifically, Plaintiff's allegations fail to raise a plausible inference that any BVF Party, individually or as a member of a "group," ever became potentially liable as a beneficial owner of more than 10 percent of the Company's common stock within the meaning of Section 16(b).  Moreover, Plaintiff fails adequately to allege any matchable "purchase" or "sale" of the Company's common stock for purposes of Section 16(b) liability, which are necessary elements of Plaintiff's Section 16(b) claim.  As a result, Plaintiff's claim fails as a matter of law and the Complaint must be dismissed.

First, none of the BVF Parties, individually, beneficially owned in excess of 10 percent of the Company's outstanding common stock for purposes of Section 16(b).  (*See* Part I.A, *infra*.) As a registered investment advisor, BVF Partners may exclude any Company securities beneficially owned indirectly through the BVF Funds or Managed Accounts for purposes of determining its status as a 10 percent beneficial owner of the Company's common stock under SEC Rule 16a-1(a)(1)(v).  (*See* Part I.A.2], *infra*.)  As control persons of BVF Partners, BVF Inc. and Mr. Lampert are likewise entitled to exclude any Company securities held through BVF Partners under SEC Rule 16a-1(a)(1)(vii).  (*See* Part I.A.3, *infra*.)

Second, Plaintiff fails to allege that any BVF Party became subject to Section 16(b) as a member of a purported Section 13(d) "group" whose aggregate beneficial ownership exceeded 10 percent of the Company's outstanding common stock.  (*See* Part I.B, *infra*.)  The Company

---

[1]    Defendants Biotechnology Value Fund, L.P. ("BVF") and Biotechnology Value Fund II, L.P. ("BVF2" and, together with BVF, the "BVF Funds"), Investment 10, L.L.C. ("INV10") and MSI BVF SPV, LLC ("MSI" and, together with INV10, the "Managed Accounts"), BVF Partners, L.P. ("BVF Partners"), BVF Inc., and Mark N. Lampert (collectively, the "BVF Parties") respectfully submit this memorandum of law in support of their motion to dismiss the Complaint   ("Compl.") (Dkt. 1) filed by Brian B. Sand & Zachary B. Sand Joint Trust ("Plaintiff").

1

securities excludable by BVF Partners as an exempt investment advisor are also excludable by the remaining BVF Parties, whom Plaintiff alleges formed a "group" with BVF Partners, for purposes of determining their status as 10 percent beneficial owners.  Thus, each of the BVF Parties may exclude the common stock held in the accounts of the BVF Funds and Managed Accounts.  (*See* Part I.B.1, *infra*.)  Moreover, Plaintiff cannot allege that the purported BVF group members beneficially owned 10 percent of the Company's common stock by virtue of their purported purchases of the Company's Series B and Series C Convertible Preferred Stock. Although shares of the Company's preferred stock were each convertible into 1,000 shares of its common stock, the preferred stock was subject to conversion caps that effectively prevented any BVF Party from converting to the extent that doing so would result in the purported BVF group's aggregate beneficial ownership exceeding 4.99% or 9.99% of the Company's outstanding common stock.  (*See* Part I.B.2, *infra*.)  In addition, because BVF Partners, BVF Inc. and Mr. Lampert are deemed not to own any of the Company securities beneficially owned by the BVF Funds or Managed Accounts under Rule 16a-1(a)(1), they cannot be members of a Section 13(d) group.  (*See* Part I.B.3, *infra*.)  As a result, Plaintiff has failed to allege that any BVF Party was ever subject to Section 16(b), and the Complaint must be dismissed on this basis alone.

Third, Plaintiff fails to identify any specific sale of the Company's common stock by any BVF Party.  The Complaint contains no allegation regarding the date, number of shares sold or sale price of any purported sale.  Plaintiff merely speculates that the BVF Parties may have sold shares of the Company's common stock during the relevant period and may have garnered short-swing profits.  But that type of speculative pleading is insufficient to state a Section 16(b) claim. (*See* Part II, *infra*.)  The Complaint must be dismissed for this independent reason.

Fourth, even if the BVF Parties did become subject to Section 16(b) as 10 percent beneficial owners of the Company's common stock (which they did not), the only "purchases" alleged by Plaintiff were the BVF Parties' purported "purchases" of the common stock underlying the Company's Series B and Series C Convertible Preferred Stock.  But the Series B and Series C shares were subject to binding conversion caps that, at all relevant times, stripped the BVF Parties of their "right to acquire beneficial ownership" of the underlying common stock, as required to

2

1  plausibly allege a "purchase" of that stock under the controlling SEC Rules and interpretations.

2  (*See* Part III, *infra*.)  As a result, Plaintiff fails to state a Section 16(b) claim, and the Complaint

3  must be dismissed on this independent basis as well.

4  **SUMMARY OF ALLEGATIONS AND JUDICIALLY NOTICEABLE FACTS**[2]

5  **A.**   **The Parties.**

6  Plaintiff, Brian B. Sand & Zachary B. Sand Joint Trust, purports to be a shareholder of

7  Oncothyreon, Inc. ("Oncothyreon" or the "Company").  (Compl. ¶ 2.)  Defendant BVF is an

8  investment fund formed as a Delaware limited partnership in 1993 to invest in the biotechnology

9  sector.  Defendant BVF2 is an investment fund formed as a Delaware limited partnership in 1999

10  to invest in the biotechnology sector.  Defendant INV10 is an Illinois limited liability company

11  formed as a passive investment vehicle for two funds of hedge funds.  Defendant MSI[3] is a

12  Delaware limited liability company formed as a passive investment vehicle for accredited

13  investors.  Defendant BVF Partners is an investment advisor registered with the SEC under

14  Section 203 of the Investment Advisors Act of 1940.[4]  BVF Partners was at all relevant times the

15  general partner and investment advisor of BVF and BVF2 and the investment advisor to INV10

16  and MSI.  (*See* Compl. ¶ 13.)   BVF Inc. is a Delaware corporation and is the general partner of

17  BVF Partners.  (*See* Compl. ¶ 8.)  Defendant Mark N. Lampert is the sole officer and director of

18  BVF Inc.  (*See* Compl. ¶ 9.)   Issuer and nominal defendant, Oncothyreon, is a Delaware

19  corporation whose common stock traded on the NASDAQ under the symbol "ONTY" at all

20  relevant times.  (*See* Compl. ¶ 11.)

21  **B.**   **The Challenged Purchases.**

22  In February 2015, the Company and "affiliates of BVF [] exchanged 4,000,000 shares of

23  common stock for 4,000 shares of Series B preferred stock."  (*Id.* ¶ 20 (quoting Oncothyreon, Inc.

24  Form 10-Q for quarter ending September 30, 2015, Ex. 2 at 16).)  Specifically, "on February 5,

25  2015, BVF and BVF2 acquired 2,600 and 1,400 shares of Oncothyreon [Series B] preferred

---

[2]      Allegations in the Complaint, if well-pleaded, are assumed to be true only for the purpose of this motion to dismiss.

[3]      MSI is named incorrectly as "MSI BVF Inc." in this action.

[4]      *See* Ex. 1, BVF Partners L.P. – Investment Adviser Firm Summary.  All "Ex. [ ]" citations in this Memorandum refer to exhibits to the accompanying Request for Judicial Notice.

3

1   stock, respectively." (*Id.* ¶ 20.)  Each share of the Company's Series B Preferred Stock "was

2   convertible into 1,000 shares of Common Stock" and "had a conversion price of $1.50" per share.

3   (*Id.*)  Each Series B share was convertible "at any time at the holder's option;" however, the

4   holder would be "prohibited from converting Series B convertible preferred stock into shares of

5   common stock if, as a result of such conversion, the holder, together with its affiliates, would own

6   more than 4.99% of the shares of the Company's common stock then issued and outstanding."

7   (*See* Oncothyreon, Inc. Form 10-Q for quarter ending September 30, 2015, Ex. 2 at 10).)[5]

8   Plaintiff concludes that "this exchange represents a purchase of 4,000,000 Shares of Common

9   Stock by the BVF [Parties] for 16(b) purposes at a price of $1.50 per Share."  (*Id.*)

10          Also in February 2015, "affiliates of BVF, a holder of more than 5% of the Company's

11  outstanding common stock, purchased 1,333 shares of the Company's Series B preferred stock for

12  an aggregate purchase price of $2.0 million."  (*See* Compl. ¶ 18 (quoting Oncothyreon, Inc. Form

13  10-Q for quarter ending September 30, 2015, Ex. 2 at 16).)  Plaintiff concludes that "the purchase

14  of 1,333 shares of Series B Convertible Preferred Stock represents a purchase of 1,333,333 [sic]

15  Shares of Common Stock at a price of $1.50 per share" by the BVF Parties.  (*See id.* ¶ 19.)

16          "[I]n May 2015, the Company entered into an exchange agreement with certain affiliates

17  of BVF to exchange 7,500,000 shares of common stock previously purchased by BVF for 7,500

18  shares of Series C Convertible Preferred Stock."  (*Id.* ¶ 21 (quoting Oncothyreon, Inc. Form 10-Q

19  for quarter ending September 30, 2015, Ex. 2 at 16).)  "BVF, BVF2, [INV10] and MSI,

20  respectively, acquired 3,040, 1,640, 1,240 and 1,580 (or a total of 7,500) shares of Series C

21  Convertible Preferred Stock."  (*Id.* ¶ 21.)  Each share of the Company's Series C Convertible

22  Preferred Stock "was convertible into 1,000 shares of Common Stock" at a "conversion or

23  exercise price of . . . $1.48 per share."  (Compl. ¶¶ 21-22.)  Each Series C share was convertible

24  "at any time at the holder's option;" however, the holder would be "prohibited from converting

25  Series C Convertible Preferred Stock into shares of common stock if, as a result of such

26  conversion, the holder, together with its affiliates, would own more than 9.99% of the shares of

27

28  ──────────────
    [5]     *See also* Ex. 3, Exhibit 10.1 to Oncothyreon Form 8-K dated Feb. 6, 2015 ("Feb. 5, 2015
    Securities Exchange Agreement"), at 13 ("<u>Beneficial Ownership Limitation</u>").

the Company's common stock then issued and outstanding." (*See* Oncothyreon, Inc. Form 10-Q for quarter ending September 30, 2015, Ex. 2 at 9).)[6]  Plaintiff concludes that "this exchange represents a purchase of 7,500,000 Shares of Common Stock . . . at a price of $1.48 per Share" by the BVF Parties.  (Compl. ¶ 22.)

## C.   The Challenged Sales.

Plaintiff alleges, based on Schedules 13G/A filed on February 13, 2015 and May 18, 2015, that "in the period between February 13, 2015 and May 18, 2015, the BVF [Parties] sold at least 4,008,082 Shares of Oncothyreon Common Stock." (*Id.* ¶¶ 24-27.)  Plaintiff alleges that "there may have been additional sales" within six months of the alleged purchases based on the "December 21, 2015 Schedule 13D filed with the SEC" by the BVF Parties. (*Id.* ¶ 30.)  "[T]he exact number of Shares purchased and sold, and the prices per Share realized, by each of the BVF [Parties] during the relevant time periods is currently unknown." (*Id.* ¶ 29.)

## GOVERNING LAW AND STANDARD ON THIS MOTION

Section 16 identifies the three categories of insiders whose profits realized on short-swing trades are potentially subject to disgorgement under Section 16(b):  (i) any person who is the beneficial owner, directly or indirectly, of more than 10 percent of any class of an issuer's equity securities registered under Section 12 of the Exchange Act (a **"10% owner"**); (ii) a director; or (iii) an officer of the issuer of such security.  *See Dreiling v. AOL, Inc.*, 578 F.3d 995, 1001 (9th Cir. 2009); 15 U.S.C. § 78p(a)(1).  For purposes of determining insider status as a 10% owner, Exchange Act Rule 16a-1(a)(1) provides that the term "'beneficial owner' shall mean any person who is deemed a beneficial owner pursuant to section 13(d) of the [Exchange] Act and the rules thereunder."  17 C.F.R. § 240.16a-1(a)(1); *see also Dreiling*, 578 F.3d at 1001-02.  Rule 13d-3(a), in turn, provides generally that a person is a "beneficial owner" of securities if the person has or shares voting power or investment power over the securities.  *See* 17 C.F.R. § 240.13d-3(a).

Section 16(b) provides in pertinent part that "any profit realized by [a 10% owner, director or officer] from any purchase and sale, or any sale and purchase, of any equity security of such

---

[6]      *See also* Ex. 4, Exhibit 10.1 to Oncothyreon Form 8-K dated May 14, 2015 ("May 13, 2015 Securities Exchange Agreement"), at pp. 12-13 of PDF ("Beneficial Ownership Limitation").

5

1   issuer . . . within any period of less than six months . . . shall inure to and be recoverable by the

2   issuer." 15 U.S.C. § 78p(b). However, Section 16(b) "shall not be construed to cover . . . any

3   transaction or transactions which the [SEC] by rules and regulations may exempt as not

4   comprehended within the purpose of this subsection." *Id.*

5         To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), Plaintiff

6   must "proffer 'enough facts to state a claim to relief that is plausible on its face.'" *Cullen v.*

7   *Netflix, Inc.*, No. 5:11-cv-1199-EJD, 2013 WL 140103, at *3 (N.D. Cal. Jan. 10, 2013) (quoting

8   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[L]abels and conclusions or a formulaic

9   recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

10  (2009) (internal quotations omitted). The court may disregard legal conclusions couched as

11  factual allegations and "naked assertions devoid of further factual enhancement," which "are not

12  entitled to the assumption of truth." *Id.* at 678-79. In reviewing the sufficiency of a complaint,

13  the court may consider "the complaint itself[,] documents incorporated by reference, and matters

14  properly subject to judicial notice." *In re NVIDIA Secs. Litig.*, 768 F.3d 1046, 1051 (9th Cir.

15  2014). "[W]here the well-pleaded facts do not permit the court to infer more than the mere

16  possibility of misconduct," the complaint must be dismissed. *Iqbal*, 556 U.S. at 679.

17  **<u>ARGUMENT</u>**

18  **I.   Plaintiff Fails To State A Claim Because None of the BVF Parties Became a**
    **Statutory Insider Subject to Section 16(b).**

19

20        "[T]here are four basic elements of a Section 16(b) claim: (1) a purchase and (2) a sale

21  of securities (3) by an officer or director of the issuer or a [10% owner] of the issuer's securities

    (4) within a six-month period." *Strom v. U.S.*, 641 F.3d 1051, 1060 (9th Cir. 2011). In addition,

22
    any alleged purchase and sale must be non-exempt and yield a profit. *See* 15 U.S.C. § 78p(b)

23
    ("any *profit realized* [ ] from any purchase and sale, or sale and purchase, of any equity security

24
    of such issuer . . . shall inure to and be recoverable by the issuer . . . . [However, Section 16(b)]

25
    *shall not be construed to cover* . . . any transaction or transactions which the [SEC] by rules and

26
    regulations may *exempt*." (emphasis added)). Because of the strict liability imposed by the

27
    statute, the Supreme Court has cautioned against exceeding the "narrowly drawn limits" on the

28

6

1   class of corporate insiders who may be subject to Section 16(b).  *See Gollust v. Mendell*, 501 U.S.

2   115, 122 (1991); *Reliance Elec. Co. v. Emerson Elec. Co.*, 404 U.S. 418, 427 (1972) (rejecting

3   proposed construction that would broaden the scope of Section 16(b)).

4         Plaintiff does not allege that any BVF Party was an officer or director of the Company at

5   the time of any challenged transaction.  Accordingly, Section 16(b) liability can only attach to a

6   BVF Party if it was a 10% owner of the Company's common stock at the time of the challenged

7   purchases and sales.  *See Roth v. Goldman Sachs Grp., Inc.*, 740 F.3d 865, 870, 874 (2d Cir.

8   2014) (Section 16(b) requires a defendant to have statutory insider status both at the time of

9   purchase and sale of issuer's securities to be liable).   Plaintiff's allegations of insider status

10   during the relevant period rely entirely on the BVF Parties' reporting aggregate beneficial

11   ownership ranging from 10.3 percent to 19.8 percent of the Company's outstanding common

12   stock for Section 13 reporting purposes.  (*See* Compl. ¶¶ 15-17, 25-26, 31.)  As demonstrated

13   below, however, the BVF Parties never, individually or in the aggregate, became 10% owners for

14   purposes of Section 16(b).

    **A.**    **None of the BVF Parties, Individually, was a 10% Owner of the Company's Common Stock for Purposes of Section 16(b) Liability.**

        **1.**    **None of the BVF Funds or Managed Accounts, Individually, Owned Greater Than 10 Percent of the Company's Common Stock.**

18         Plaintiff does not (and cannot) allege that any BVF Fund or Managed Account,

19   individually, beneficially owned in excess of 10 percent of the Company's outstanding common

20   stock during the purported short-swing period.  Rather, Plaintiff alleges that the BVF Parties are

21   each subject to Section 16(b) as 10% owners, because they were members of a purported Section

22   13(d) "group" that owned, collectively, "15% of the outstanding Common Stock of Oncothyreon"

23   for Section 13 reporting purposes as of February 2015.  (*See* Compl. ¶¶ 15-17.)  As discussed in

24   Part I.B, *infra*, Plaintiff's "group" theory of beneficial ownership fails as a matter of law.

7

**2.      Under the SEC Rule 16a-1(a)(1)(v) Investment Advisor Exemption, BVF Partners is Deemed Not to Beneficially Own Company Securities Held in the BVF Funds' Accounts or the Managed Accounts For Purposes of Determining its 10% Owner Status.**

**a)      Beneficial Ownership of Securities for Purposes of Section 16(b) is Less Inclusive than Beneficial Ownership for Purposes of Section 13.**

"'Beneficial ownership' under SEC Rules is defined differently for different purposes." *Egghead.Com, Inc. v. Brookhaven Capital Mgmt. Co.*, 340 F.3d 79, 83 (2d Cir. 2003). Under SEC Rule 13d-3(a), the "beneficial owner" of a security "*for purposes of sections 13(d) and 13(g) of the [Exchange] Act*," is defined generally as "any person who, directly or indirectly . . . has or shares:  (1) Voting power which includes the power to vote, or to direct the voting of, such security; and/or, (2) Investment power which includes the power to dispose, or to direct the disposition of, such security." 17 C.F.R. § 240.13d-3(a) (emphasis added). This "broad definition of beneficial ownership is consistent with § 13's purpose, which is to alert the marketplace to every large, rapid . . . accumulation of securities, . . . which might represent a potential shift in corporate control." *Egghead*, 340 F.3d at 84 (internal quotation omitted). Notably, "[n]o serious adverse consequences flow to the holder or owner of such securities as a result of [Rule 13d-3(a)'s] broadly inclusive definition." *Id.*

By contrast, Section 16(b) "has far more drastic consequences" than Section 13. *See id.* Section 16(b) renders a 10% owner strictly liable to the issuer for any short-swing profits realized from trading in that issuer's securities. Accordingly, the SEC's "rules for determining beneficial ownership under § 16 are ***less inclusive*** than those governing determination of beneficial ownership for purposes of § 13." *Id.* (emphasis added). The SEC Rule 16a-1(a)(1) definition of "beneficial owner" governs the analysis of whether a person is a Section 16 insider as a 10% owner. 17 C.F.R. §240.16a-1(a)(1). Rule 16a-1(a)(1) "begins by adopting the definition of beneficial owner that governs under § 13(d) [*i.e.*, Rule 13d-3], but then adds a proviso to the effect that eleven classes of holders of securities 'shall not be deemed the beneficial owner of securities . . . held for the benefit of third parties or in customer or fiduciary accounts in the ordinary course of business . . . as long as such shares are acquired by such institutions or person

8

without the purpose or effect of changing or influencing control of the issuer . . . .'" *Egghead*, 340 F.3d at 84 (quoting 17 C.F.R.  §240.16a-1(a)(1)).  The list of exempt entities includes, among others, registered investment advisers such as BVF Partners, L.P.  See 17 C.F.R.  §240.16a-1(a)(1)(v).

### b)   BVF Partners Satisfies the Requirements of the Investment Advisor Exemption.

Plaintiff erroneously concludes that BVF Partners was a statutory insider as a 10% owner because it reported in certain Amended Schedules 13G and a Schedule 13D beneficial ownership of the Company common stock held directly by the BVF Funds and Managed Accounts, which in the aggregate exceeded ten percent of class outstanding.  (*See* Compl. ¶¶ 14, 16-17.)  Although BVF Partners, by virtue of being an investment advisor with voting and investment power over the Company common stock held by the BVF Funds and Managed Accounts, beneficially owns those securities for purposes of Section 13(d) and reported such beneficial ownership in its Schedules 13G[7] and 13D[8], the definition of beneficial ownership for purposes of Section 13 reporting is (as set forth above) broader than the definition of beneficial ownership for purposes of determining 10% owner status in the Section 16 context.  Indeed, for purposes of determining its status *as a 10% owner*, BVF Partners is deemed *not* to beneficially own the Company securities acquired and held for the accounts of the BVF Funds or the Managed Accounts by virtue of SEC Rule l6a-1(a)(1)(v)'s investment advisor exemption.

Under Rule 16a-1(a)(1)(v), registered investment advisors are deemed not to be beneficial owners of securities that were:  (i) "held for the benefit of third parties or in customer or fiduciary accounts in the ordinary course of business"; (ii) acquired "without the purpose or effect of changing or influencing control of the issuer"; and (iii) acquired "without. . . engaging in any arrangement subject to Rule 13d-3(b)."  *See* 17 C.F.R.  §240.16a-1(a)(1) (emphasis added).  BVF Partners has been a registered investment advisor since March 2012[9] and, as discussed below,

---

[7]    *See* Ex. 5, Amendment No. 3 to Schedule 13G, filed Feb. 13, 2015 (listing aggregate number of shares of Company common stock beneficially owned by each BVF Party for Section 13 reporting purposes); Ex. 6, Amendment No. 4 to Schedule 13G, filed May 18, 2015 (same); Ex. 7, Amendment No. 5 to Schedule 13G, filed May 18, 2015 (same).
[8]    *See* Ex. 8, Schedule 13D, filed Dec. 21, 2015.
[9]    *See* Ex. 1, BVF Partners L.P. – Investment Adviser Firm Summary.

9

satisfies all three prongs of the investment advisor exemption.

**i.    The Securities were "Held for the Benefit of Third Parties *or* in Customer *or* Fiduciary Accounts."**

The first prong of the investment advisor exemption requires that the securities at issue were "held for the benefit of third parties *or* in customer *or* fiduciary accounts in the ordinary course of business." *See* 17 C.F.R. §240.16a-1(a)(1) (emphasis added). Because this provision is written in the disjunctive, an investment adviser may satisfy the first prong of the investment advisor exemption in *any* of the three ways listed. *Cf. Roth v. Jennings*, 489 F.3d 499, 508, 514 (2d Cir. 2007) (construing listed provisions of SEC Rule 13d-5 in the disjunctive). BVF Partners satisfies this prong in three independent ways.

As an initial matter, Plaintiff acknowledges in the Complaint that BVF Partners manages the portfolio assets of the BVF Funds and Managed Accounts. (*See* Compl. ¶¶ 13-14 ("BVF Partners is and was at all relevant times the general partner of BVF and BVF2 and the investment adviser to [INV10] and MSI. . . . BVF Partners . . . had the power to direct the vote and disposition of the Common Stock held by the BVF Entities and, in fact, made all voting and investment decisions for the BVF Entities").) There is no allegation in the Complaint that BVF Partners held Company securities in the BVF Funds' accounts or the Managed Accounts for any purpose other than passive investment. Thus, the Complaint offers no basis to infer that the Company common stock at issue was held by BVF Partners outside the ordinary course of its investment advisory business.

BVF Partners satisfies the first prong of the investment advisor exemption because the BVF Funds' accounts and the Managed Accounts were also "fiduciary accounts." As the investment advisor to the Funds and Managed Accounts, BVF Partners owed fiduciary duties to those entities under the Investment Advisors Act of 1940. *See, e.g.*, *SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 191-92 (1963) ("The Investment Advisers Act of 1940 thus reflects a congressional recognition of the delicate fiduciary nature of an investment advisory relationship" (internal quotation omitted)); *Goldstein v. SEC*, 451 F.3d 873, 881-82 (D.C. Cir. 2006) (Advisers Act "created a fiduciary duty of loyalty between an adviser and his client").

10

1  Accordingly, the BVF Funds' and Managed Accounts' holdings were held in "fiduciary

2  accounts."

3       The fact that BVF Partners is the general partner of the BVF Funds does not affect the

4  fiduciary nature of their relationship because "[h]edge fund general partners meet the definition of

5  'investment adviser' in the Advisers Act."[10] *Goldstein v. SEC*, 451 F.3d 873, 876 (D.C. Cir.

6  2006) (citing *Abrahamson v. Fleschner*, 568 F.3d 862, 869-71 (2d Cir. 1977), *overruled in part*

7  *on other grounds by Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11 (1979)).  As the

8  Second Circuit held in *Abrahamson v. Fleschner*, the general partner of a partnership formed to

9  invest the contributions of limited partners falls within the definition of "investment adviser" in

10  the Advisers Act because the general partner is a "person[] who manage[s] the funds of others for

11  compensation."  568 F.3d at 870.  This remains true even where the general partner invests its

12  own funds in the partnership.  *See id.* at n.27.  Because BVF Partners satisfies the first prong of

13  the investment advisor exemption with respect to the BVF Funds and Managed Accounts on this

14  basis alone, the Court may proceed to the second prong of the investment advisor exemption.

15       Even if the Company securities were not held in "fiduciary accounts" (and they were),

16  BVF Partners also satisfies the first prong of the investment advisor exemption because, as

17  reflected in the SEC filings on which Plaintiff bases its Section 16(b) claim, the securities at issue

18  were held in "customer accounts."  Specifically, the Schedules 13G/A cited in the Complaint

19  demonstrate that all of the securities at issue were held in the accounts of the BVF Funds and

20  Managed Accounts.[11]  (*See* Compl. ¶ 31 (citing Schedules 13G/A filed February 13, 2015 and

21  May 18, 2015).)  BVF Partners acted as the investment advisor to the Managed Accounts (*see*

22  Compl. ¶ 7) and the BVF Funds (*id.* ¶ 14) in the ordinary course of its investment advisory

23  business.  *Cf. Fleschner*, 568 F.3d at 870 (general partner of partnership formed to invest

24  contributions of limited partners is a "person[] who manage[s] the funds of others for

25  compensation.")  BVF Partners, therefore, held the Company securities in "customer accounts"

26  and satisfies the first prong of the investment advisor exemption on this independent basis.

27  _____

28  [10]    As general partner of the Funds, BVF Partners, L.P. also owes to the Funds the fiduciary
duties of loyalty and care imposed on it under partnership law.  *See* Cal. Corp. Code § 15904.08.
[11]    *See* Footnote 7, *supra*.

11

Finally, BVF Partners satisfies the first prong of the investment advisor exemption because the Company securities at issue were held by BVF Partners for "the benefit of third parties": *i.e.*, the BVF Funds and the Managed Accounts. Plaintiff does not allege that the BVF Funds and the Managed Accounts were not third parties vis-à-vis BVF Partners, or that the Company securities held in the BVF Funds' accounts and Managed Accounts were not held for their respective benefits. Thus, BVF Partners satisfies the first prong on this ground as well.

### ii. The Securities were Acquired "Without the Purpose or Effect of Changing or Influencing Control of the Issuer."

BVF Partners, as an investment advisor, acquired the Company securities at issue for passive investment purposes. The Complaint contains no allegation that BVF Partners, or anyone representing BVF Partners, ever sought to influence the Company's management regarding its business strategy or operations. Indeed, the Complaint is based in large part on the BVF Parties' Schedules 13G, which were filed pursuant to Rule 13d-1(c) and were premised on passive investment.[12] (*See* Compl. ¶¶ 16-17, 22, 25-26, 31.) Because the securities at issue were acquired "without the purpose or effect of changing or influencing control of the issuer," and the Complaint contains no allegation to the contrary, BVF Partners satisfies the second prong of the investment advisor exemption. *See* 17 C.F.R. §240.16a-1(a)(1).

### iii. The Securities were Acquired Without Engaging in any Arrangement Subject to Rule 13d-3(b).

The Complaint contains no allegation (nor could it) that BVF Partners acquired the Company securities at issue through "an[] arrangement subject to Rule 13d-3(b)." *See* 17 C.F.R. §240.16a-1(a)(1). Rule 13d-3(b) provides that:

> "[a]ny person who, directly or indirectly, creates or uses a trust, proxy, power of attorney, pooling arrangement or any other contract, arrangement, or device with the purpose or effect of divesting such person of beneficial ownership of a security or preventing the vesting of such beneficial ownership as part of a plan or scheme

---

[12] *See* 17 C.F.R. § 240.13d-1(c) ("A person who would otherwise be obligated . . . to file a statement on Schedule 13D [ ] may, in lieu thereof, file with the Commission . . . a short-form statement on Schedule 13G [ ]. *Provided*, that the person: (1) Has not acquired the securities with any purpose, or with the effect, of changing or influencing the control of the issuer . . . ."); *see also* Ex. 5, Amendment No. 3 to Schedule 13G, filed Feb. 13, 2015, at 1 (checked box indicating that Schedule 13G was filed pursuant to Rule 13d-1(c)); Ex. 6, Amendment No. 4 to Schedule 13G, filed May 18, 2015, at 1 (same); Ex. 7, Amendment No. 5 to Schedule 13G, filed May 18, 2015, at 1 (same).

1
2

to evade the reporting requirements of section 13(d) or (g) of the Act shall be deemed for purposes of such sections to be the beneficial owner of such security." 17 C.F.R. §240.13d-3(b).

3
4
5
6
7
8
9
10
11
12
13
14

Nothing in the Complaint suggests that any BVF Party sought to evade the reporting requirements of Section 13.  Indeed, as noted above, the Complaint is based in large part on the BVF Parties' Schedules 13G/A, which were properly filed pursuant to Rule 13d-1(c).  This forecloses any argument that the BVF Parties sought to evade Section 13's reporting requirements.[13]  BVF Partners thus satisfies the third and final prong of the investment advisor exemption and, as a result, may exclude all of the Company common stock beneficially owned by the BVF Funds and Managed Accounts for purposes of its 10% owner calculation.  *See* 17 C.F.R. §240.16a-1(a)(1)(v).  Because, as discussed above, BVF Partners beneficially owned no Company common stock outside of the shares beneficially owned by the BVF Funds and Managed Accounts, BVF Partners was never, individually, subject to Section 16(b) as a 10% owner.  Critically, this fact is fatal to Plaintiff's "group" theory of 10% ownership.  (*See* Part I.B, *infra*.)

15
16

         **c)**      **Under SEC Rule 16a-1(a)(4), Statements in BVF Partners' Forms 4 are Not Indicative of its Beneficial Ownership of the Company's Common Stock for Purposes of Section 16.**

17
18
19
20
21
22

      Pursuant to the reporting requirements of Section 16(a), BVF Partners filed a Form 4 statement with the SEC disclosing changes in its beneficial ownership of the Company's common stock on February 5, 2015.[14]  Even though, as discussed above, BVF Partners beneficially owned no Company common stock for purposes of determining its 10% owner status, it nonetheless chose to report conservatively, for purposes of its Form 4 disclosures, that it was a 10% owner as of February 5, 2015.[15]  Under Rule 16a-1(a)(4), however, "[a]ny person filing a statement

23
24
25
26
27

---

[13]    Although Plaintiff alleges (incorrectly) that the BVF Parties "fail[ed] to file Form 4s with the SEC after February 5, 2015" (Compl. ¶ 29), Forms 4 are not a type of Section 13 report. Rather, Forms 4 are filed pursuant to Section 16(a).  *See, e.g.*, Form 4 General Instructions, at 1, *available at* https://www.sec.gov/about/forms/form4data.pdf (last visited June 26, 2016) ("The Commission is authorized to solicit the information required by this Form [4] pursuant to Section[] 16(a) [of the Exchange Act] and the rules and regulations thereunder.").  Any purported "failure" to file a Form 4 is thus irrelevant to whether the BVF Parties sought to evade *Section 13's* reporting requirements.

28

[14]    *See* Ex. 9, Form 4 dated Feb. 5, 2015.
[15]    *See id.* (checking "10% Owner" box in Row 5, "Relationship of Reporting Person(s) to Issuer").

13

pursuant to section 16(a) of the Act [(*e.g.*, a Form 4)] may state that the filing shall not be deemed an admission that such person is, for purposes of section 16 of the Act or otherwise, the beneficial owner of any equity securities covered by the statement." 17 C.F.R. § 240.16a-1(a)(4). Indeed, each of the reporting persons for the February 5, 2015 Form 4—*i.e.*, BVF Partners, the BVF Funds, BVF Inc. and Mr. Lampert—specifically "disclaim[ed] beneficial ownership of the securities reported [t]herein" for purposes of determining their status as 10% owners.[16] And, in any event, statements or omissions made in Section 16(a) reports are not dispositive of a reporting person's insider status. *See, e.g.*, *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 129 (2d Cir. 2001) (Form 4 report was not an admission that defendant was a statutory insider).

BVF Partners reported 10% ownership in the February 5, 2015 Form 4 on the basis of a single district court decision, which may be read to suggest that the Rule 16a-1(a)(1) investment advisor exemption might not be available to the general partner of a limited partnership, where the general partner also serves as investment advisor to the partnership. That decision, *Donoghue v. Genomica Corporation*, has injected a degree of uncertainty into the investment advisor exemption and 10% owner analysis. *See* No. 02-cv-110, 2003 WL 1609191 (S.D.N.Y. Mar. 7, 2003).[17] As discussed below, however, *Genomica*, which has yet to be cited by any court, is neither binding nor persuasive in this case, because it was based on: (i) precedent subsequently rejected by the Second Circuit; and (ii) a separate, erroneous construction of Rule 16a-1(a)(1).

In *Genomica*, the court held at the motion to dismiss stage, and drawing all inferences in the plaintiff's favor, that the allegations in the complaint permitted an inference that the investment advisor exemption might not apply in the case of the defendant investment advisor. The plaintiff alleged that private investment fund defendants, John Does One and Two, were the beneficial owners of discretionary trading accounts managed by registered investment advisor defendant, Perry Corp., and that defendant Richard C. Perry was Perry Corp.'s president, sole

---

[16]   *See id.* at n.1.

[17]   A leading treatise cautioned that, in light of *Genomica*, "[w]here an investment adviser serves as general partner of an investment fund, [] as opposed to serving only as investment adviser, securities held by the investment fund may not be considered to be held for the benefit of third parties, and therefore the investment adviser may not be able [to] rely on Rule 16a-1(a)(1)(v) to exclude those securities.") *See* Romeo & Dye § 2.03[5][d][iii], at 136 & n.136 (citing *Genomica*).

14

director and sole stockholder.  2003 WL 1609191, at *1.  The plaintiff further alleged that those four defendants formed a "group" under Section 13(d) of the Exchange Act and, by virtue of their group membership, were 10% owners of Genomica securities at all relevant times.  *Id.*  The plaintiff alleged that Perry Corp. and Mr. Perry (the "Perry defendants") purchased and sold Genomica securities on behalf of John Does One and Two and for the benefit of all members of the group, resulting in short-swing profits.  *Id.*

The Perry defendants moved to dismiss the complaint, "asserting that they, as registered investment advisors, [we]re not 'beneficial owners' subject to disgorgement under Section 16(b)."  *Id.* at *2.  Citing the district court decision in *Morales v. Auspex Systems, Inc.*, 00-cv-1173, 2001 WL 258502 (S.D.N.Y. Mar. 15, 2001), Judge Preska held that even where a registered investment advisor otherwise qualifies for the Rule 16a-1(a)(1)(v) exemption,

> an investment advisor "can still be liable under § 16(b) if plaintiff can establish that [the investment advisor] is a member of a group, one or more members of which is not exempt under § 16(b), because the exemption for investment advisors applies only if all the members of the group fall within the exemption."  *Genomica*, 2003 WL 1609191, at *2 (quoting *Auspex*, 2001 WL 258502, at *2).

Relying on statements in the Perry defendants' Schedule 13D filing, the plaintiff alleged that the Genomica shares "were acquired by two or more private investment funds for which Perry Corp. acts as general partner and/or investment advisor."  *Genomica*, 2003 WL 1609191, at *3.  Drawing all inferences in the plaintiff's favor, the court inferred that the alleged short-swing trading was possibly by "entities for which [the investment advisor] is general partner."  *Id.*  Under that scenario, the court held that the securities at issue "would not be held 'for the benefit of third parties,' and, therefore, the investment advisor exemption does not apply."  *Id.* (citing *Auspex*).  The court further held that those facts permitted an inference (albeit "just barely") that the defendants, including the non-exempt John Doe defendants, were members of a group, thereby vitiating the investment advisor exemption.  *See id.* at *2-3.  As a result, the court denied the Perry defendants' motion to dismiss despite grave misgivings regarding the merits of the plaintiff's case.  *Id.* at *3 ("For plaintiff ultimately to prevail in this action, she will need to make a considerably more particularized, specified and extensive showing that defendants operated as a

15

1    group for § 13(d) and § 16(b) purposes.  In short, plaintiff has a long row to hoe.").

2    Shortly after the *Genomica* decision was announced, the Second Circuit, in an unrelated

3    Section 16 case, rejected one of the *Genomica* court's two bases for holding that the investment

4    advisor exemption did not apply.  *See Egghead.Com, Inc. v. Brookhaven Capital Mgmt. Co.*, 340

5    F.3d 79 (2d Cir. 2003).  In *Egghead*, the plaintiff argued that because the investment advisor

6    defendants were members of a group that included entities not covered by Rule 16a-1(a)(1)'s

7    exemption list, the investment advisor defendants could not claim the investment advisor

8    exemption under Rule 16a-1(a)(1)(v).  *Id.* at 85.  The Second Circuit noted that several district

9    court decisions, including *Auspex*, had supported the plaintiff's view.  *Id.*  The Second Circuit,

10   however, explicitly rejected that interpretation and held that "each exemption granted by Rule

11   16a-1(a)(1) stands on its own," and that the investment advisor exemption does not cease to apply

12   merely because the investment advisor is a member of a group that includes non-exempt entities.

13   *See id.* at 85-86 ("Plaintiff asserts there are policy reasons to support the contention that group

14   activity by investment advisers should negate the effect of [Rule 16a-1(a)(1)(v)].  In the face of

15   the clear language of the rule, however, no argument based only on policy can prevail.")

16   *Egghead*, therefore, eviscerated the *Genomica* court's primary rationale for why the investment

17   advisor exemption did not apply.

18   Aside from the reversal announced in *Egghead*, the *Genomica* decision lacks persuasive

19   value regarding the investment advisor exemption because the court erred in its construction of

20   Rule 16a-1(a)(1).  As discussed above, the first prong of the investment advisor exemption—that

21   the securities at issue were "held for the benefit of third parties *or* in customer *or* fiduciary

22   accounts"—is written in the disjunctive.  *See* 17 C.F.R. §240.16a-1(a)(1) (emphasis added).  The

23   *Genomica* court held that disclosures in the defendants' Schedule 13D filings permitted an

24   inference that the trading at issue was by fund defendants for which the investment advisor was

25   general partner.  2003 WL 1609191, at *3.  The court then concluded that "the inference may be

26   drawn that the securities at issue were . . . not [ ] held by [the investment advisor] 'for the benefit

27   of third parties,' and, therefore, the investment advisor exemption does not apply."  *Id.*  By

28   ignoring whether the securities at issue were held in "customer or fiduciary accounts," the court

16

erroneously construed the terms listed in Rule 16a-1(a)(1) in the conjunctive, rather than the disjunctive.  *Cf. Roth v. Jennings*, 489 F.3d 499, 514 (2d Cir. 2007) (district court's ruling was in error where it "gave a conjunctive reading to provisions that are disjunctive").  Thus, the *Genomica* court's secondary rationale for holding that "the investment advisor exemption [did] not apply" lacks persuasive value for this reason, too.[18]

### 3. Under the SEC Rule 16a-1(a)(1)(vii) Control Person Exemption, BVF Inc. and Mr. Lampert are Deemed Not to Beneficially Own Securities Held by the BVF Funds or the Managed Accounts For Purposes of Determining Their 10% Owner Status.

BVF Inc. and Mr. Lampert are exempt under SEC Rule 16a-1(a)(1)(vii) as control persons of BVF Partners.  *See* 17 C.F.R. § 240.16a-1(a)(1)(vii) (the "control person exemption"). Under the control person exemption, control persons of an exempt registered investment advisor may exclude from their 10% owner calculations any securities excludable by the investment advisor. *See id.*  Specifically, the control person of an exempt investment advisor shall not be deemed the beneficial owner of securities owned by the advisor if the control person's direct and indirect ownership, excluding shares owned indirectly through the registered investment advisor, "does not exceed one percent of the securities of the subject class."  *See id.*  BVF Inc. and Mr. Lampert satisfy this test.

As BVF Partners' general partner and control person (*see* Compl. ¶ 13), BVF Inc. may be deemed to beneficially own all securities held by BVF Partners for purposes of Section 13(d). *See* 17 C.F.R. § 240.13d-3(a).  As the "sole officer and director of BVF, Inc.," (Compl. ¶ 13), Mr. Lampert is also a control person of BVF Partners and may be deemed to beneficially own all

---

[18]      Even assuming *arguendo* that the *Genomica* decision was good law after *Egghead*, the decision was governed by the outdated pleading standard of *Conley v. Gibson*, 355 U.S. 41 (1957), under which a motion to dismiss would be denied "unless it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 45-46.  Against that backdrop, the *Genomica* court's holding that the plaintiff's allegations "just barely" satisfied the threshold requirements for pleading a "group" and skepticism of the plaintiff's ability ultimately to prove the existence of a group, *see* 2003 WL 160191, at *2-3, strongly suggest that those allegations—which were the same allegations relied upon in the court's analysis of the investment advisor exemption—would fall short of raising the *plausible* inference now required under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  As a result, the *Genomica* decision, which appears to be the only decision addressing the availability of the investment advisor exemption to the general partner of a limited partnership, has no remaining precedential or persuasive value.

17

1    securities held by BVF Partners through BVF, Inc.  However, as discussed above, BVF Partners

2    falls within the investment advisor exemption.  Mr. Lampert and BVF Inc. never held any

3    Company common stock, other than the shares held indirectly through BVF Partners, and

4    Plaintiff does not (and cannot) allege otherwise.[19]  Thus, by virtue of the control person

5    exemption, BVF Inc. and Mr. Lampert may exclude from their 10% owner calculations any

6    Company common stock excludable by BVF Partners.  *See* 17 C.F.R. § 240.16a-1(a)(1)(vii).  As

7    a result, neither BVF Inc. nor Mr. Lampert beneficially owned any Company common stock for

8    purposes of determining their status as 10% owners and neither, individually, ever became subject

9    to Section 16(b) as a 10% owner.

### B.    Plaintiff Fails Adequately to Allege that any BVF Party Became a 10% Owner as a Member of a Section 13(d) "Group."

12    As demonstrated above in Part I.A, none of the BVF Parties, individually, was a 10%

owner of the Company's common stock at the time of any challenged transaction.  Indeed, neither

BVF Partners nor BVF Inc. or Mr. Lampert beneficially owned *any* Company common stock for

purposes of their determining their status as 10% owners.  Under SEC Rule 13d-5(b)(1), however,

the shares beneficially owned by members of a "group" may be aggregated for purposes of the

10% owner calculation. 17 C.F.R. § 240.13d-5(b)(1).  If a "group" of persons within the meaning

of Section 13(d) and SEC Rule 13d-5(b)(1) beneficially owns in the aggregate more than 10% of

a registered class of equity securities, each member of the group is deemed to be a 10% owner.

*See* 56 Fed. Reg. 7242, n.54 (Feb. 21, 1991) ("1991 Release").  Plaintiff cannot make this

showing.

Plaintiff's allegations of insider status during the relevant period rely entirely on the BVF

Parties' reporting aggregate beneficial ownership ranging from 10.3 percent to 19.8 percent of the

Company's outstanding common stock *for purposes of Section 13*.[20]  (*See* Compl. ¶¶ 15-17, 25-

---

[19]    *See, e.g.*, Ex. 5, Amendment No. 3 to Schedule 13G, filed Feb. 13, 2015, at 6-8 (aggregate number of shares of Company common stock beneficially owned by BVF Partners is identical to number of shares beneficially owned by BVF Inc. and Mr. Lampert); Ex. 6, Amendment No. 4 to Schedule 13G, filed May 18, 2015, at 6-8 (same); Ex. 7, Amendment No. 5 to Schedule 13G, filed May 18, 2015, at 6-8 (same).

[20]    The percentages cited in the Complaint were disclosed in the BVF Parties' Schedules 13G/A and Schedule 13D.  *See* Ex. 5, Amendment No. 3 to Schedule 13G, filed Feb. 13, 2015, at 6-8 (reporting in Row 11 aggregate beneficial ownership of 15.0% of the Company's outstanding

18

26, 31.)  However, as explained above in Part I.A.2.a, "beneficial ownership" is defined differently for purposes of determining a defendant's 10% owner status under Section 16(b).  *See Egghead*, 340 F.3d at 84 (definition of "beneficial owner" is less inclusive for Section 16 purposes).  Any allegation that the BVF Parties' beneficial ownership for Section 13 purposes must be the same as their beneficial ownership for purposes of determining their status as 10% owners is a mere "legal conclusion couched as factual allegation" and is "not entitled to the assumption of truth" on a motion to dismiss.  *See Iqbal*, 556 U.S. at 678-79.  Because the remaining allegations in the Complaint fail adequately to allege that any BVF Party became a 10% owner as a member of a Section 13(d) group, Plaintiff's Section 16(b) claim fails as a matter of law.

### 1.   Shares Excludable by BVF Partners Under the Investment Advisor Exemption are Likewise Excludable by the Other BVF Group Members For Purposes of the 10% Owner Calculation.

As the Second Circuit explained in *Egghead*, 340 F.3d at 85-86, shares excludable by a registered investment adviser under Rule 16a-1(a)(1)(v) are also excludable by the members of a "group" of which the investment adviser is a member.  This is true even where the group contains non-exempt members.  *Id.*  As the district court explained,

> once the eligible institutions and the securities qualifying for exclusion from beneficial ownership have been determined to satisfy the conditions that the Act and related Rules seek to achieve, it serves little legislative or regulatory purpose to vitiate an institutional exemption and require the same shares to count for ten percent holder analysis in the event the institution chooses to combine . . . as part of a group that includes non-exempt members. . . .  Such a requirement would run counter to the purposes the SEC articulated in responding to the institutional concerns that persuaded it that the Rule 16a-1(a)(1) exemptions were necessary in the first place in order to 'avoid undue interference with the day-to-day business' of the specified institutional fiduciaries and custodians. . . .  *Rosen v. Brookhaven Capital Mgmt. Co.*, 113 F. Supp. 2d 615, 625-26 (S.D.N.Y. 2000), *aff'd sub nom. Egghead.Com, Inc. v. Brookhaven Capital Mgmt. Co.*, 340 F.3d 79 (2d Cir. 2003) (quoting *Ownership Reports and Trading By Officers, Directors and Principal Security Holders*, Exchange Act Release No. 34-27148, 56 Fed. Reg. 35667, 35670 (Aug. 28, 1989)).

As discussed above, *all* of the Company common stock in the BVF Funds' accounts and

_____

common stock as of Dec. 31, 2014); Ex. 7, Amendment No. 5 to Schedule 13G, filed May 18, 2015, at 6-8 (10.3% as of May 13, 2015); Ex. 10, Amendment No. 6 to Schedule 13G, filed Aug. 18, 2015, at 6-8 (15.4% as of Aug. 14, 2015); Ex. 8, Schedule 13D, filed Dec. 21, 2015, at 6-8 (19.8% as of Dec. 15, 2015).

19

1  Managed Accounts were excludable by BVF Partners under the investment advisor exemption.

2  Thus, *all* of those shares are likewise excludable from the calculation of BVF Parties' aggregate

3  beneficial ownership for purposes of determining their status as 10% owners.  As a result,

4  Plaintiff cannot plausibly allege that the BVF Parties were 10% owners based on the common

5  stock owned directly by the BVF Funds and Managed Accounts.

6          **2.**        **Conversion Caps in the Series B and Series C Convertible Preferred Stock Prevented the BVF Parties From Reaching the 10% Owner**

7                          **Threshold Based on the Underlying Common Stock.**

8        Plaintiff cannot plausibly allege that the BVF Parties became 10% owners based on their

9  purported "purchases" of "at least 11,000,000 Shares of Oncothyreon Common Stock" underlying

10  the Series B and Series C Convertible Preferred Stock on which Plaintiff's claim relies.  (*See*

11  Compl. ¶¶ 18-23.)  The SEC typically treats the date of acquisition of a fixed price derivative

12  security, such as the Series B and Series C Convertible Preferred Stock, as the date the holder

13  acquires beneficial ownership of the underlying securities.  *See* 1991 Release, 56 Fed. Reg. at

14  7248-49.  However, as disclosed in the Company's SEC filings, the Series B and Series C

15  Convertible Preferred Stock at issue here were subject to conversion caps that prevented the BVF

16  Parties from converting, and the Company from effecting any attempted conversion, into shares

17  of the underlying common stock if, as a result of such conversion, the BVF Parties would own in

18  the aggregate more than 4.99% or 9.99% of the shares of the Company's outstanding common

19  stock.[21]  (*See* Summary of Allegations B, *supra*.)

20   

---

[21]     *See* Ex. 3, Feb. 5, 2015 Securities Exchange Agreement, at 13 ("<u>Beneficial Ownership</u> <u>Limitation</u>. . . .  the [Company] shall not effect any conversion of the Series B Preferred Stock, and a Holder shall not have the right to convert any portion of the Series B Preferred Stock, to the extent that, after giving effect to an attempted conversion set forth on an applicable Notice of Conversion, such Holder (together with such Holder's Affiliates, and any other Person whose beneficial ownership of Common Stock would be aggregated with the Holder's for purposes of Section 13(d) or Section 16 of the Exchange Act and the applicable regulations of the Commission, including any "group" of which the Holder is a member (the foregoing, "**Attribution Parties**")) would beneficially own a number of shares of Common Stock in excess of the Beneficial Ownership Limitation (as defined below)). . . .  The "**<u>Beneficial Ownership</u> <u>Limitation</u>**" shall be 4.99% of the number of shares of the Common Stock outstanding immediately after giving effect to the issuance of shares of Common Stock pursuant to such Notice of Conversion."); Ex. 4, May 13, 2015 Securities Exchange Agreement, at pp. 12-13 of PDF (identical conversion cap language for Series C Preferred Stock, but setting "**<u>Beneficial</u> <u>Ownership Limitation</u>**" at 9.99%).

20

The Ninth Circuit's decision in *Decker v. Advantage Fund, Ltd.*, 362 F.3d 593 (9th Cir. 2004), is directly on point in holding that such conversion caps preclude Section 16 liability. There, the Court analyzed the effect of a preferred stock conversion cap on the defendants' beneficial ownership of the underlying common stock for purposes of determining their status as 10% owners:

> Under 17 C.F.R. section 240.13d-3(c), a stockholder who holds a convertible security (e.g., the preferred stock in the present case) is a beneficial owner of the stock for which the security may be converted (e.g., the common stock in the present case) if the security may be converted within sixty days.  In the present case, **[the defendants] were not the beneficial owners of more than 10% of the common stock because the convertible security (preferred stock) that they held was subject to a conversion cap that would bar conversion once the owner reached a threshold of 4.9% ownership**.   After that, the remaining preferred stock would not be allowed to be converted, and thus was not convertible under [17 C.F.R.] section 240.13d-3(c). . . .   **[The] agreements therefore automatically stripped [the defendants] of their "right to acquire beneficial ownership of such security" once that threshold was reached and therefore protected them from section 16(b) liability**."  *Id.* at 596-97 (emphasis added).

Like the defendants in *Decker*, the BVF Parties were at all relevant times subject to conversion caps that stripped their right to convert the preferred stock and acquire beneficial ownership of the underlying common stock in excess of the 4.99% or 9.99% limitations.  *See id.* The conversion caps in the Series B and Series C Convertible Preferred Stock thus prevented the BVF Parties from reaching the 10% owner threshold.  *See id.* at 597; *see also Levy v. Southbrook Int'l Invs., Ltd.*, 263 F.3d 10, 15 (2nd Cir. 2001) (because investor's "right to acquire" stock was at all times subject to a conversion cap, Section 16(b) did not apply).  Because none of the BVF Parties became subject to Section 16(b) as a 10% owner, Plaintiff's Section 16(b) claim fails as a matter of law.

> **3.      Because BVF Partners, BVF, Inc., and Mr. Lampert Did Not Beneficially Own Any Common Stock For Purposes of Determining Their 10% Owner Status, They Cannot Be Members of a Section 13(d) "Group."**

Plaintiff alleges that the BVF Parties became subject to Section 16(b) liability as 10% owners by virtue of their purported membership in a Section 13(d) group and their aggregate beneficial ownership of the Company's common stock.  But courts have held that, in order for a person to be deemed a member of a Section 13(d) group with beneficial owners of an issuer's

21

1   securities, that person must itself be a beneficial owner of the issuer's securities.  As one district

2   court recently explained:

3
> Although the Second Circuit has not ruled on whether a person can be a member
> of a "group" without being a "beneficial owner," a court in this district and two
4   > circuits have held that beneficial ownership of the equity securities is necessary in
> order to be a member of a "group" as defined in section 13(d).  *Transcon Lines v.*
5   > *A.G. Becker Inc.*, 470 F.Supp. 356, 373 (S.D.N.Y. 1979) ("[I]n light of the purpose
> of Section 13(d) as evidenced by the legislative history and as interpreted by other
6   > courts in analogous cases, the better rule is that one who is not the beneficial
> owner of any shares of the subject company is not a member of a group within the
7   > meaning of Section 13(d)(3)."); *Rosenberg v. XM Ventures*, 274 F.3d 137, 145 (3d
> Cir. 2001) ("[O]ne who does not have beneficial ownership of the equity securities
8   > of an issuer cannot be a member of a group of individuals that do have beneficial
> ownership."); *Hemispherx Biopharma, Inc. v. Johannesburg Consol. Inv.*, 553
9   > F.3d 1351 (11th Cir. 2008) ( "[A] beneficial ownership interest in securities is
> necessary to become a member of a group within the meaning of section 13(d)(3)
10  > of the Exchange Act").  *Cartica Mgmt., LLC v. Corpbanca, S.A.*, 50 F. Supp. 3d
> 477, 494-95 (S.D.N.Y. 2014).

11

12  BVF Partners, BFV Inc. and Mr. Lampert did not beneficially own any shares of the Company's

13  common stock for purposes of determining their status as 10% owners.  (*See* Part I.A.2-3, *supra*.)

14  Accordingly, they cannot be members of a Section 13(d) group and never became subject to

15  Section 16(b) as 10% owners.  *See, e.g.*, *Rosenberg*, 274 F.3d at 145.[22]  As a result, the Complaint

16  must be dismissed against BVF Partners, BVF Inc. and Mr. Lampert on this independent basis.

17  **II.     Plaintiff Fails Adequately to Allege any Matchable "Sale" Within the Meaning of
         Section 16(b).**

18
            Plaintiff's Section 16(b) fails as a matter of law for the independent reason that the

19  Complaint does not identify a single "sale" by any BVF Party of the Company's common stock

20  for purposes of Section 16(b).  Plaintiff fails to allege the date of any purported matchable "sale,"

21  (*see id.* ¶¶ 24-30), and concedes its failure to allege the number of shares sold or share price

22  realized in any particular sale.  (*See* Compl. ¶ 29.)  Plaintiff attempts to mask that fatal defect by

23  suggesting that the BVF Parties somehow "fail[ed] to file Form 4s with the SEC after February 5,

24  2015"[23] and speculating that the "exact amount and prices at which Shares were sold can be

25

26  ——————————————
    [22]     *See also* Romeo & Dye, at 181 & n.306 [§ 2.03[6][c][iv]] (a person who does not
27  beneficially own any issuer securities cannot be a member of a Section 13(d) group, even if the
    person agrees to act together with members of a group in furtherance of a common objective of
28  acquiring, disposing, holding or voting the issuer's securities).
    [23]     As discussed in Part I, the BVF Parties were not 10% owners and thus were not required
    to file Forms 4.

determined through pre-trial discovery." (Compl. ¶ 29.)  But courts routinely hold that such speculation does not suffice to allege a matchable transaction for purposes of establishing Section 16(b) liability.  *See, e.g.*, *Chechele v. Morgan Stanley*, 896 F. Supp. 2d 297, 304-05 (S.D.N.Y. 2012) (dismissing Section 16(b) claim as "mere speculation" where plaintiff alleged short-swing transactions that "may have" happened, but "cannot be identified [ ] with specificity because they have not been publicly reported"); *Chechele v. Hayne*, No. 2-11-cv-379, 2011 WL 2519522, at *4 (E.D. Pa. June 20, 2011) (dismissing Section 16(b) claim based on short-swing trades that plaintiff "might discover during the course of the action" (internal quotation and alteration omitted)).  Because Plaintiff cannot plausibly allege any matchable sale, which is a necessary element of its Section 16(b) claim (*see Strom*, 641 F.3d at 1060), the Complaint must be dismissed in its entirety on that basis alone.

## III.    Plaintiff Fails Adequately to Allege any Matchable "Purchase" Within the Meaning of Section 16(b).

Even assuming, *arguendo*, that the BVF Parties became subject to Section 16(b) as 10% owners at the time of the challenged trades and adequately alleged a matchable sale (which they did not), Plaintiff still fails to state a claim because the Complaint contains no plausible allegation of any matchable "purchase" of the Company's common stock, which is a necessary element of its Section 16(b) claim. *See id.*  Plaintiff purports to allege that the BVF Parties "purchased" the Company's common stock for purposes of Section 16(b) when it acquired the Series B and Series C Convertible Preferred Stock in three separate transactions in February and May of 2015. (Compl. ¶¶ 18-23.)[24]  Each share of preferred stock was convertible into 1,000 shares of common stock.  (*Id.* ¶¶ 20, 22.)  But the "purchase" date of the common stock underlying a convertible security for Section 16 purposes is premised on the acquisition of beneficial ownership of the

---

[24]    Specifically, Plaintiff alleges the following three transactions:  (i) a February 2015 transaction with the Company in which "affiliates of BVF" exchanged 4,000,000 shares of the Company's common stock for 4,000 shares of Series B Preferred Stock, each of which was convertible into 1,000 shares of common stock (Compl. ¶ 20); (ii) a February 2015 underwritten offering by the Company in which "affiliates" of BVF purchased 1,333 shares of the Series B Preferred Stock (Compl. ¶ 18); and (iii) a May 2015 transaction with the Company in which "affiliates of BVF" exchanged 7,500,000 shares of the Company's common stock for 7,500 shares of Series C Preferred Stock, each of which was convertible into 1,000 shares of common stock (Compl. ¶¶ 21-22).

23

1  underlying security.  *See* 1991 Release, 56 Fed. Reg. at 7248-49; *see also id.* at 7250 (illustrating

2  Section 16(b) liability under new regulatory framework for derivative securities through examples

3  in which "there was an *acquisition of a beneficial ownership* of an equity security of [the issuer]

4  followed by a disposition in less than six months" (emphasis added)).  Under Rules 16a-1(a)(1)

5  and 13d-3(d)(1)(i), beneficial ownership of a security requires that the "person has *the right to*

6  *acquire beneficial ownership of such security . . . within sixty days*."  *See* 17 C.F.R. § 240.16a-

7  1(a)(1); 17 C.F.R. § 240.13d-3(d)(1)(i) (emphasis added).  To the extent that the BVF Parties

8  were 10% owners at all relevant times, as Plaintiff alleges, the conversion caps in the Series B

9  and Series C Convertible Preferred Stock stripped their right to acquire beneficial ownership of

10  any of the underlying common stock.  (*See* Part I.B.2, *supra*.)  Thus, even under Plaintiff's

11  theory, the transactions in which the BVF Parties acquired the Series B and Series C Convertible

12  Preferred Stock were not "purchases" of the underlying common stock.  Because Plaintiff fails to

13  allege any matchable "purchase" for purposes of Section 16(b), the Complaint must be dismissed

14  on this basis alone.

15  ## CONCLUSION

16      For the foregoing reasons, the BVF Parties respectfully request that the Complaint be

17  dismissed in its entirety and with prejudice.

18

19  Dated:  June 27, 2016              HOGAN LOVELLS US LLP

20                   By:         */s/ Robert B. Hawk*

21                           Robert B. Hawk

22                           HOGAN LOVELLS US LLP
                         4085 Campbell Avenue, Suite 100
                         Menlo Park, CA  94025

23                           Telephone:  + 1 (650) 463-4000
                         Facsimile:  + 1 (650) 463-4199

24                           robert.hawk@hoganlovells.com

25                           Dennis H. Tracey, III (admitted *pro hac vice*)

26                           Derek Musa (admitted *pro hac vice*)
                         HOGAN LOVELLS US LLP

27                           875 Third Avenue
                         New York, NY 10022

28                           Telephone:  (212) 918-3000

24

1

2

Facsimile:  (212) 918-3100
dennis.tracey@hoganlovells.com
derek.musa@hoganlovells.com

3

4

5

6

*Attorneys for Defendants Biotechnology Value Fund, L.P., Biotechnology Value Fund II, L.P., Investment 10, L.L.C., MSI BVF SPV, LLC, BVF Inc., and Mark N. Lampert*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

25