1   ABRAHAM, FRUCHTER
       & TWERSKY, LLP
2   IAN D. BERG (Bar No. 263586)
    TAKEO A. KELLAR (Bar No. 234470)
3   11622 El Camino Real, Suite 100
    San Diego, CA 92130
4   Tel:     (858) 792-3448
    Fax:     (858) 792-3449
5   *iberg@aftlaw.com*
    *tkellar@aftlaw.com*
6
    Jack G. Fruchter (to be admitted *pro hac vice*)
7   Cassandra Porsch (admitted *pro hac vice*)
    One Penn Plaza, Suite 2805
8   New York, NY 10119
    Tel:     (212) 279-5050
9   Fax:     (212) 279-3655
    *jfruchter@aftlaw.com*
10  *cporsch@aftlaw.com*

11  Attorneys for Plaintiff Brian B. Sand &
    Zachary B. Sand Joint Trust

12

13              **UNITED STATES DISTRICT COURT**

14              **NORTHERN DISTRICT OF CALIFORNIA**

15                **SAN FRANCISCO DIVISION**

16

17  BRIAN B. SAND & ZACHARY B. SAND          Case No. 3:16-cv-01313-RS
    JOINT TRUST,
18
                        Plaintiff,           **MEMORANDUM OF LAW IN
19                                           OPPOSITION TO BVF
            v.                               DEFENDANTS' MOTION TO
                                             DISMISS PLAINTIFF'S
20  BIOTECHNOLOGY VALUE FUND, L.P.,          COMPLAINT**
    BIOTECHNOLOGY VALUE FUND II,
21  L.P., INVESTMENT 10, L.L.C., MSI BVF
    INC., BVF PARTNERS, L.P., BVF Inc.,      Date:  October 27, 2016
22  MARK N. LAMPERT and
    ONCOTHYREON, INC.                        Time:  1:30 p.m.
23
                        Defendants.          Courtroom:  3
24
                                             Judge:  Hon. Richard Seeborg
25

26

27

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

SUMMARY OF FACTS ..............................................................................................2

PLEADING STANDARD ............................................................................................5

THE SECTION 16(b) CLAIM .....................................................................................5

ARGUMENT ...............................................................................................................7

I.     Defendants Are Statutory Insiders of Oncothyreon...................................7

          A.     BVF Partners, BVF Inc. and Lampert Are Liable for Section 16(b) Profits to the Extent of Their Pecuniary Interest in the ONTY Securities Traded by the BVF Funds ...............................................................................7

          B.     Plaintiff Has Plausibly Alleged That the BVF Defendants Formed a Section 13(d) Group ...........................................................................9

                  1.  All of the BVF Defendants Were Part of the Section 13(d) Group ......9

                  2.  The Investment Advisor Exemption Does Not Apply Here ...............12

                  3.  Rule 16a-1(a)(1) Exempts "Institutions" or "Persons," Not Shares ....14

                  4.  The Conversion Caps Did Not Prevent the BVF Defendants from Forming a Section 13(d) Group ........................................................16

II.    Defendants Made Matchable Purchases and Sales Pursuant to Section 16(b) ......17

          A.     The Complaint Alleges Matchable Purchases and Sales Pursuant to Section 16(b) ...............................................................................17

          B.     The Acquisition of the Underlying Shares of Common Stock Is a Purchase Even If Not for Determining 10% Beneficial Ownership Status...............20

CONCLUSION............................................................................................................23

# TABLE OF AUTHORITIES

**Cases**                                                   **Page(s)**

*Analytical Surveys, Inc. v. Tonga Partners, L.P.*,
  684 F.3d 36 (2d Cir. N.Y. 2012)................................................................14, 21

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..........................................................................................5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)........................................................................................19

*Chechele v. Morgan Stanley*,
  896 F. Supp. 2d 297 (S.D.N.Y. 2012)............................................................19

*Chechele v. Hayne*,
  No. 2:11-0379, 2011 WL 2519522 (E.D. Pa. June 20, 2011)...........................19

*City Capital Assoc. Ltd. P'ship v. Interco, Inc.*,
  860 F.2d 60 (3d Cir. 1988)................................................................................9

*Decker v. Advantage Fund Ltd.*,
  362 F.3d 593 (9th Cir. 2004) ..........................................................................17

*Donoghue v. Bulldog Inv'rs Gen. P'ship*,
  696 F.3d 170 (2d Cir. 2012)..............................................................................6

*Donoghue v. Genomica Corp.*,
  02 Civ. 0110 (LAP), 2003 U.S. Dist. LEXIS 3183 (S.D.N.Y. Mar. 6, 2003) ...................11

*Donoghue v. Golden State Bancorp, Inc.*,
  02 Civ. 2404 (TPG), 2003 U.S. Dist. LEXIS 17233 (S.D.N.Y. Sept. 30, 2003)...............19

*Dreiling v. Am. Online, Inc.*,
  No. C05-1339JLR, 2005 U.S. Dist. LEXIS 35991 (W.D. Wash. Dec. 5, 2005)................5

*Egghead.com, Inc. v. Brookhaven Capital Management Co., Ltd.*,
  194 F. Supp. 2d 232 (S.D.N.Y. 2002), *aff'd*, 340 F.3d 79 (2d Cir. 2003) ........................13

*Feder ex rel. Ivax Corp. v. Frost*,
  220 F.3d 29 (2d Cir. 2000)..........................................................................6, 20

*Gilligan v. Jamco Dev. Corp.*,
  108 F.3d 246 (9th Cir. 1997) ............................................................................5

*Goldstein v. QVT Assocs. GP LLC*,
  10 Civ. 2488 (HB), 2010 U.S. Dist. LEXIS 109973 (S.D.N.Y. Oct. 15, 2010)................11

ii

*Gollust v. Mendell*,
   501 U.S. 115 (1991) ..................................................................................6

*Greenberg v. Hudson Bay Master Fund Ltd.*,
   14cv5226 (DLC), 2015 U.S. Dist. LEXIS 62236 (S.D.N.Y. May 12, 2015)..........13, 14, 18

*Greenfield v. Criterion Capital Mgmt., LLC*,
   No. 15-cv-03583, 2016 U.S. Dist. LEXIS 86907 (N.D. Cal. July 5, 2016) ......................18

*Gwozdzinsky ex rel. Revco D.S. v. Zell/Chilmark Fund, L.P.*,
   156 F.3d 305 (2d Cir. 1998) ..................................................................................6

*Huppe v. WPCS Int'l Inc.*,
   670 F.3d 214 (2d Cir. 2012) ..................................................................................13, 20

*In re NVIDIA Corp. Secs. Litig.*,
   768 F.3d 1046 (9th Cir. 2014) ..................................................................................5

*Intesa Sanpaolo, S.p.A. v. Credit Agricole Corporate & Inv. Bank*,
   No. 12 Civ. 2683 (RWS), 2013 U.S. Dist. LEXIS 129763 (S.D.N.Y. Aug. 31, 2013) ......19

*Klawonn v. YA Glob. Invs., L.P.*,
   No. 10-2108 (SRC), 2011 U.S. Dist. LEXIS 88535 (D.N.J. Aug. 10, 2011) ...............5, 19

*McCarthy v. Dun & Bradstreet Corp.*,
   482 F.3d 184 (2d Cir. 2007) ..................................................................................5

*Magma Power Co. v. Dow Chem. Co.*,
   136 F.3d 316 (2d Cir. 1998) ..................................................................................22

*Morales v. Quintel Entm't, Inc.*,
   249 F.3d 115 (2d Cir. 2001) ..................................................................................6, 7, 10, 11

*Mujica v. AirScan Inc.*,
   771 F.3d 580 (9th Cir. 2014) ..................................................................................5

*Preap v. Johnson*,
   No. 14-16326, 2016 U.S. App. LEXIS 14271 (9th Cir. Aug. 4, 2016)............................14

*Rosen ex rel. Egghead.com, Inc. v. Brookhaven Capital Mgmt. Co.*,
   113 F. Supp. 2d 615 (S.D.N.Y. 2000) ..................................................................................7

*Roth v. Goldman Sachs Grp., Inc.*,
   740 F.3d 865 (2d Cir. 2014) ..................................................................................6

*Roth v. Jennings*,
   489 F.3d 499 (2d Cir. 2007) ..................................................................................6, 7

iii

*Schaffer ex rel. Triton Energy Corp. v. Soros*,
    92 Civ. 1233 (LMM), 1994 U.S. Dist. LEXIS 9886 (S.D.N.Y. July 18, 1994)..............11

*Siaperas v. Mont. State Comp. Ins. Fund*,
    480 F.3d 1001 (9th Cir. 2007)....................................................................................5

*Simmonds v. Credit Suisse Secs. (USA) LLC*,
    No. 09-35262, 2011 U.S. App. LEXIS 974 (9th Cir. Jan. 18, 2011) ...........................5-6

*Strauss ex rel. Servico, Inc. v. Am. Holdings*,
    902 F. Supp. 475 (S.D.N.Y. 1995) ...........................................................................10

*Strom v. United States*,
    641 F.3d 1051 (9th Cir. 2010)..................................................................................22

*Swierkiewicz v. Sorema N.A.*,
    534 U.S. 506 (2002) ..................................................................................................5

*Wellman v. Dickinson*,
    475 F. Supp. 783 (S.D.N.Y. 1979), *aff'd*, 682 F.2d 355 (2d Cir. 1982), *cert. denied*, 460
    U.S. 1069 (1983).....................................................................................................10

**Statutes and Rules**

15 U.S.C. § 78c(a)(13) (2016) .........................................................................................21

15 U.S.C. § 78m(d)(3) (2016)........................................................................................6, 7

15 U.S.C. § 78p(b) (2016).............................................................................................1, 5

Fed. R. Civ. P. 8(a) ....................................................................................................5, 17

Fed. R. Civ. P. 8(a)(2) ....................................................................................................5

Fed. R. Civ. P. 12(b)(6)...................................................................................................5

17 C.F.R. § 240.13d-5(b)(1) (2016)...............................................................................6, 7

17 C.F.R. § 240.16a-1(a)(1) (2016) ................................................................1, 6, 14, 20

17 C.F.R. § 240.16a-1(a)(1)(v) (2016)  .......................................................................14, 15

17 C.F.R. § 240.16a-1(a)(2) (2016).  ........................................................2, 12, 20, 21

17 C.F.R. § 240.16b-6(a) (2016)..................................................................................2, 21, 22

Memorandum of Law in Opposition to
BVF Defendants' Motion to Dismiss Plaintiff's Complaint - 3:16-cv-01313-RS

**Other Authority**

Peter J. Romeo & Alan L. Dye, Section 16 Treatise and Reporting Guide 134-35 (§ 2.03[5][f]) (3d ed. 2008) ..........................................................................................................13

H.R. Rep. No. 1711, 90th Cong., 2d Sess. (1968), *as reprinted in* 1968 U.S.C.C.A.N. 2811, 2818) ...............................................................................................................................9

Ownership Reports and Trading by Officers, Directors and Principal Security Holders, Exchange Act Release No. 28,869, 1991 WL 292000 (Feb. 8, 1991)................................................22

Ownership Reports and Trading by Officers, Directors and Principal Security Holders, Exchange Act Release No. 34-28,869, 56 Fed. Reg. 7242 (Feb. 21, 1991) ......................................21

Plaintiff Brian B. Sand & Zachary B. Sand Joint Trust ("Plaintiff") respectfully submits this memorandum of law in opposition to the motion to dismiss the complaint (the "Complaint"), filed by Biotechnology Value Fund, L.P. ("BVF"), Biotechnology Value Fund II, L.P. ("BVF2"), Investment 10, L.L.C. ("ILL10"), MSI BVF SPV, L.L.C. ("MSI"), BVF Partners, L.P. ("BVF Partners"), BVF Inc. ("BVF Inc.") and Mark N. Lampert ("Lampert") (collectively, the "BVF Entities" or "BVF Defendants"; BVF, BVF2, ILL10 and MSI, as a subgroup, the "BVF Funds"). In the Complaint, Plaintiff has sufficiently stated a claim under Section 16(b) of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), 15 U.S.C. § 78p(b) ("Section 16(b)"), in order to recover short-swing insider trading profits realized by the BVF Defendants while they were statutory insiders of Oncothyreon, Inc. ("Oncothyreon," "ONTY" or the "Company").

## PRELIMINARY STATEMENT

Defendants proffer essentially two meritless defenses to Plaintiff's well-pleaded Section 16(b) claim, asserting that: (1) Plaintiff has failed to plausibly allege that the BVF Defendants formed a Section 13(d) group because (i) the Investment Adviser exemption applicable to BVF Partners must be extended to the non-Investment Adviser BVF Funds and (ii) the "conversion caps" applicable to the BVF Funds' convertible securities prevented the BVF Funds from beneficially owning 10% or more of ONTY registered securities; and (2) Plaintiff has not plausibly alleged matchable purchases and sales. These defenses are not supported by the law or the facts. Defendants' additional argument that neither BVF Partners, nor BVF Inc., nor Lampert beneficially owns any Company securities for purposes of determining 10% ownership also does not alter the conclusion that the BVF Funds formed a 13(d) group, purchased and sold ONTY equity securities, and must disgorge the profits realized therefrom.

*First*, Plaintiff has plausibly alleged that Defendants formed a group to purchase and sell Oncothyreon securities. Rule 16a-1(a)(1) is very clear that any "Investment Adviser Exemption" is available to qualifying "institutions" or "persons" and is not a blanket exemption of the shares held by the investment adviser jointly with others. Specifically, the exemption applies only to securities held on behalf of others; where the "adviser" has a pecuniary interest, as here, the exemption does not apply. Furthermore, Defendants BVF, BVF2, ILL10, and MSI shared voting

and investment power over those securities and shared beneficial ownership with their investment adviser (as agents). Their ONTY shares may be counted in determining their 10% ownership status irrespective of whether BVF Partners, their investment adviser, is not deemed a beneficial owner of those securities for purposes of Section 16(b). The BVF Funds, as a group, beneficially owned more than 10% of ONTY's common stock without including the common stock underlying their convertible preferred stock. Finally, even if BVF Partners, BVF, Inc. and Lampert did not beneficially own any ONTY securities, they could still be a member of a 13(d) group and moreover, such "group" of BVF Funds existed without their membership as they controlled each of the BVF Funds and exercised all voting and investment decisions for them.

*Second*, the BVF Defendants acquired ONTY convertible preferred stock and the underlying common stock for Section 16(b) profit recovery purposes in February 2015 and May 2015. Even if the underlying common stock could not be counted in determining 10% ownership status, Defendants were nonetheless statutory insiders subject to Section 16(b) as a consequence of their other common stock holdings. Accordingly, they are liable for the profits realized from short swing trades in the convertible preferred stock and the underlying common stock pursuant to Rules 16a-1(a)(2) and 16b-6(a). Plaintiff also specifically alleged that in the period between February 13, 2015 and May 18, 2015, the BVF Entities sold at least 4,008,082 shares of ONTY Common Stock. On those facts, Plaintiff has sufficiently alleged matchable purchases and sales under Section 16(b).

The BVF Defendants were members of a group of statutory insiders from the outset of the time period alleged in the Complaint and the facts alleged show that their insider status continued throughout the relevant period and that they profited from matching short swing purchases and sales. Plaintiff has adequately alleged all of the necessary elements of a Section 16(b) claim and the BVF Defendants' motion to dismiss should be denied.

**SUMMARY OF FACTS**

Oncothyreon is a publicly traded company, the common stock ("Common Stock") of which is registered with the Securities and Exchange Commission (the "SEC") pursuant to Section 12 of the Exchange Act. Compl. ¶ 11. Plaintiff is a shareholder of Oncothyreon seeking

2

to obtain a monetary recovery for the Company.  Compl. ¶¶ 2, 11.  Defendants BVF, BVF2, ILL10, MSI, BVF Partners and BVF, Inc. are a series of related investment vehicles.  Compl. ¶¶ 3-8.  Defendant Lampert is the sole officer and director of BVF Inc.  Compl. ¶ 9.  BVF Inc. is the general partner of BVF Partners.  Compl. ¶ 8.  BVF Partners, in turn, is the general partner of each of BVF and BVF2 and the investment advisor of ILL10 and MSI.  Compl. ¶ 7.

Through a series of corporate affiliations, the BVF Funds are or were at all relevant times under the common control of BVF Partners, BVF Inc. and Lampert.  Compl. ¶¶ 13-14.  Thus, as alleged in the Complaint, the BVF Entities acted together at all relevant times as a group with respect to acquiring, holding, voting and/or disposing of Oncothyreon equity securities.  Compl. ¶ 13.  As a result of this common control and joint activity, the BVF Entities acted as a "group" beneficially owning more than 10% of outstanding Oncothyreon common stock, subjecting them to potential liability under Section 16(b).  Compl. ¶¶ 15-17.  Specifically, in a SC 13G/A form filed with the SEC as of February 13, 2015, the BVF Entities reported that they collectively owned 13,762,260 shares of Oncothyreon common stock, or 15% of the outstanding common stock of Oncothyreon.  Compl. ¶ 16.  Without counting the Common Stock underlying the Preferred Stock (defined herein), the BVF Entities continued to be subject to Section 16(b) throughout the relevant time period, as they reported owning 10.3%, 15.4% and 19.8% of the outstanding common stock of Oncothyreon in SEC filings on May 18, 2015, August 18, 2015 and December 21, 2015, respectively.  Compl. ¶17.

In its SEC Form 10-Q for the period ending September 20, 2015, Oncothyreon reported that, in February 2015, it had closed an offering of 1,333 shares of Series B convertible preferred stock ("Series B Preferred") at $1,500 per share, which stock was acquired by affiliates of BVF. Compl. ¶18.  This preferred stock was convertible into Common Stock at a price of $1.50 per share.  Compl. ¶ 19.  Thus, it was convertible into 1,333,333 shares of Common Stock.  *Id.*  For 16(b) purposes, the purchase of the preferred stock, which is a derivative security, is deemed to be a purchase of the underlying common stock.  *Id.*  The purchase of 1,333 shares of Series B Preferred by the BVF Funds therefore represented a purchase of 1,333,333 shares of Common Stock at a price of $1.50 per share.  Compl. ¶ 19.

Oncothyreon also disclosed that, in February 2015, affiliates of BVF exchanged 4,000,000 shares of Common Stock for 4,000 shares of Series B Preferred.  Compl. ¶ 20.  The Series B Preferred acquired in exchange for the Common Stock had an exercise price of $1.50 per share.  *Id.*  As each share of the Series B Preferred was convertible into 1,000 shares of Common Stock, this exchange represented a purchase of 4,000,000 shares of Common Stock at $1.50 per share by the BVF Entities for 16(b) purposes.  *Id.*  Finally, Oncothyreon further disclosed that, in May 2015, it entered into an exchange agreement with certain affiliates of BVF to exchange 7,500,000 shares of Common Stock previously purchased by BVF for 7,500 shares of Series C Convertible Preferred Stock ("Series C Preferred" and, together with the Series B Preferred, the "Preferred Stock"), with a conversion or exercise price of $1.48 per share.  Compl. ¶ 21.  As each share of the Series C Preferred was convertible into 1,000 shares of Common Stock, this exchange represented a purchase of 7,500,000 shares of Common Stock at $1.48 per share by the BVF Entities for 16(b) purposes.  Compl. ¶ 22.  Thus, in the period between February 2015 and May 2015, the BVF Entities purchased at least 11,000,000 shares of Oncothyreon Common Stock.  Compl. ¶23.

Within six months of these purchases, the BVF Entities sold Oncothyreon Common Stock.  Compl. ¶ 24.  Specifically, Oncothyreon's February 2015 Schedule 13G/A reported that the BVF Entities collectively owned 13,762,260 shares of Oncothyreon Common Stock, while Oncothyreon's May 18, 2015 Schedule 13G/A reported that the BVF Entities collectively owned 9,754,178 shares of Oncothyreon Common Stock.  Compl. ¶¶ 25-26.  Accordingly, in the period between February 13, 2015 and May 18, 2015, the BVF Entities sold at least 4,008,082 shares of Oncothyreon Common Stock.  Compl. ¶ 27.  The closing stock price of Oncothyreon during this time period ranged from a low of $1.41 to a high of $2.59, and Oncothyreon Common Stock traded at prices higher than $1.50 per share on 91 of the 94 trading days during that time period.  *Id.*  These purchases and sales are matchable using the "lowest in, highest out" method to yield profits recoverable from the BVF Entities under Section 16(b).  Compl. ¶ 28.

1

**PLEADING STANDARD**

2       The allegations of a Section 16(b) action are to be evaluated under the liberal pleading

3   requirements of Fed. R. Civ. P. 8(a).  *Dreiling v. Am. Online, Inc.*, No. C05-1339JLR, 2005 U.S.

4   Dist. LEXIS 35991, at *7 (W.D. Wash. Dec. 5, 2005); *Klawonn v. YA Glob. Invs., L.P.*, No. 10-

5   2108 (SRC), 2011 U.S. Dist. LEXIS 88535, at *2-3 (D.N.J. Aug. 10, 2011).  Fed. R. Civ. P.

6   8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the

7   pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).  As explained by

8   the Supreme Court, Rule 8(a) is a "simplified notice pleading standard" that requires only that

9   the complaint "give[s] the defendant fair notice of what the plaintiff's claim is and the grounds

10  upon which it rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

11      When considering a motion under Fed. R. Civ. P. 12(b)(6), the Ninth Circuit has held that

12  the liberal notice pleading standard under Rule 8(a) establishes "a powerful presumption against

13  rejecting pleadings for failure to state a claim." *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249

14  (9th Cir. 1997).  Dismissal is proper "only when there is no cognizable legal theory or an

15  absence of sufficient facts alleged to support a cognizable legal theory." *Siaperas v. Mont. State*

16  *Comp. Ins. Fund*, 480 F.3d 1001, 1003 (9th Cir. 2007).  A trial court considering a Rule 12(b)(6)

17  motion must accept as true all factual statements alleged in the complaint and draw all

18  reasonable inferences in favor of the non-moving party. *Mujica v. AirScan Inc.*, 771 F.3d 580,

19  589 (9th Cir. 2014); *accord McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir.

20  2007).  In reviewing the sufficiency of a complaint, the court may consider "the complaint

21  itself[,] documents incorporated by reference, and matters properly subject to judicial notice." *In*

22  *re NVIDIA Corp. Secs. Litig.*, 768 F.3d 1046, 1051 (9th Cir. 2014).

23                              **THE SECTION 16(b) CLAIM**

24      Section 16(b) is a statutory right intended to "prevent[ ] the unfair use of information

25  which may have been obtained by [a] beneficial owner, director, or officer by reason of his

26  relationship to the issuer. . . ."  15 U.S.C. § 78p(b) (2016).  Liability exists where there was "(1)

27  a purchase and (2) a sale of securities (3) by . . . a shareholder who owns more than ten percent

28  of any one class of the issuer's securities (4) within a six-month period." *Simmonds v. Credit*

5

*Suisse Secs. (USA) LLC*, No. 09-35262, 2011 U.S. App. LEXIS 974, at *13 (9th Cir. Jan. 18, 2011) (quoting *Gwozdzinsky ex rel. Revco D.S. v. Zell/Chilmark Fund, L.P.*, 156 F.3d 305, 308 (2d Cir. 1998)).  A group holding 10% beneficial ownership is also subject to Section 16(b), as discussed *infra*.

Section 16(b) implements this vital component of the federal securities laws through a statutory scheme of strict liability and disgorgement of profits when its terms are violated regardless of any degree of fault.  *See, e.g.*, *Gollust v. Mendell*, 501 U.S. 115, 122 (1991); *Feder ex rel. Ivax Corp. v. Frost*, 220 F.3d 29, 32 (2d Cir. 2000).  Departure from the "flat rules" of Section 16(b) is permitted "in a very limited number of situations."  *Roth v. Goldman Sachs Grp., Inc.*, 740 F.3d 865, 869 (2d Cir. 2014).

Section 16(b) liability extends to beneficial owners of 10% or more of an issuer's stock.  *See, e.g., Donoghue v. Bulldog Inv'rs Gen. P'ship*, 696 F.3d 170, 173 (2d Cir. 2012).  The statute, however, does not define the term "beneficial owner" for purposes of determining which persons are covered by the statute.  Instead, the SEC has filled the gap by defining "beneficial owner" as "any person who is deemed a beneficial owner pursuant to section 13(d) of the [Exchange] Act and the rules thereunder."  SEC Rule 16a-1(a), 17 C.F.R. § 240.16a-1(a)(1) (2016); *see generally Dreiling*, 578 F.3d at 1002; *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 118, 122 (2d Cir. 2001).

Section 13(d)(3) provides that "[w]hen two or more persons act as a . . . group for the purpose of acquiring, holding, or disposing of securities of an issuer, such . . . group shall be deemed a 'person' . . . ."  15 U.S.C. § 78m(d)(3) (2016).  Rule 13d-5(b)(1) provides that "[w]hen two or more persons agree to act together for the purpose of acquiring, holding, voting or disposing of equity securities of an issuer, the group formed thereby shall be deemed to have acquired beneficial ownership, for purposes of sections 13(d) . . . ."  17 C.F.R. § 240.13d-5(b)(1) (2016).  There is no need to combine all the purposes listed in Rule 13d-5; satisfying one of the common objectives is a sufficient basis for forming a Section 13(d) group.  *Roth v. Jennings*, 489 F.3d 499, 514 (2d Cir. 2007).

A person who is a member of a group is deemed to be the beneficial owner of all the issuer's securities owned by the other group members. *See, e.g., Jennings*, 489 F.3d at 508 (citing 15 U.S.C. § 78m(d)(3); SEC Rule 13d-5(b)(1), 17 C.F.R. § 240.13d-5(b)(1)). Accordingly, a person individually owning less than 10% of an issuer's stock can still be subject to Section 16(b) liability based upon the ownership interests of other members of a group. *See, e.g. Rosen ex rel. Egghead.com, Inc. v. Brookhaven Capital Mgmt. Co.*, 113 F. Supp. 2d 615, 618 (S.D.N.Y. 2000) (group members' holdings were considered in the aggregate despite each member owning less than 10%).

There are two elements for forming a Section 13(d) group: (1) "the members combined in furtherance of a common objective;" and (2) one of the common objectives must involve the acquisition, holding or disposition of an issuer's equity securities. *Jennings*, 489 F.3d at 508 (citing cases); *see also* 15 U.S.C. § 78m(d)(3); SEC Rule 13d-5(b)(1), 17 C.F.R. § 240.13d-5(b)(1). "Whether the requisite [group] agreement exists is a question of fact." *Quintel Entm't, Inc.*, 249 F.3d at 124. "The agreement may be formal or informal and may be proved by direct or circumstantial evidence." *Id.*

## ARGUMENT

### I.    Defendants Are Statutory Insiders of Oncothyreon

#### A.    BVF Partners, BVF Inc. and Lampert Are Liable for Section 16(b) Profits to the Extent of Their Pecuniary Interest in the ONTY Securities Traded by the BVF Funds

Defendants correctly state that "Plaintiff's allegations of insider status during the relevant period rely entirely on the BVF Parties' reporting *aggregate* beneficial ownership ranging from 10.3 percent to 19.8 percent of the Company's outstanding common stock for Section 13 reporting purposes." BVF Defendants' Notice of Motion and Motion to Dismiss (ECF No. 31) ("Defs' Mot.") at 7 (citing Compl. ¶¶ 15-17, 25-26, 31) (emphasis added). Their Memorandum of Law then bewilderingly proceeds for 11 pages, over half of their argument, to contend that "None of the BVF Parties, *Individually*, was a 10% Owner of the Company's Common Stock for Purposes of Section 16(b) Liability." *Id.* (emphasis added). The sole purpose of that misplaced

argument appears to be to present a strong defense to a claim that was never alleged, as a sleight of hand to misdirect the Court from recognizing that the defenses posited -- to the claims actually alleged -- are farcical with no meaningful legal support.

Plaintiff never alleged that any Defendant, *individually* (without taking into account the common stock owned by other members of the group), owned greater than 10% of the outstanding Common Stock. As a "group", the BVF Funds' direct beneficial ownership of ONTY Common Stock exceeded the 10% ownership threshold, as discussed *infra*, albeit BVF Partners, BVF Inc. and Lampert formed the hub of the wheel through which the BVF Funds, as spokes, formed a group (the "Group"). Furthermore, BVF Partners, BVF Inc. and Lampert were not named as Defendants for the purpose of aggregating their stock holdings held as investment advisers to reach the 10% ownership threshold. Rather, they were named as relief defendants for having reported, in the Form 4s filed with the SEC relating to their trading in ONTY, that they each disclaim beneficial ownership "except to the extent of his or its pecuniary interest therein." *See, e.g.,* Exhibit 9 attached to the Request for Judicial Notice in Support of Motion to Dismiss ("RJN") (ECF No. 32). Similarly, Plaintiff demands profits recoverable from Defendants "to the extent of their respective pecuniary interests therein, under Section 16(b)." Compl. ¶ 28.

Similarly, Defendants argue that neither BVF Partners, nor BVF Inc., nor Lampert can be a member of a Section 13(d) group because they did not beneficially own any Common Stock. Defs' Mot. at 22. As mentioned above, the fact that BVF Partners, BVF Inc. and Lampert disclaim beneficial ownership of the securities reported in Form 4s "except to the extent of his or its pecuniary interest therein" implies that they do beneficially own some ONTY securities.

Also, BVF Partner, BVF Inc. and Lampert can be members of a Section 13(d) group without owning any ONTY securities. The cases cited by Defendants got it wrong. In explaining the Section 13(d)(3)'s definition of "person", the House Report stated:

> This provision would prevent a group of persons who seek to pool their voting or other interests in the securities of an issuer from evading the provisions of the statute because no one individual owns more than 10 percent of the securities. The group would be deemed to have become the beneficial owner, directly or indirectly, of more than 10 percent of a class of securities at the time they agreed

8

to act in concert. Consequently, the group would be required to file the information called for in section 13d(1) within 10 days after they agree to act together, **whether or not any member of the group had acquired any securities at that time.** This provision is designed to obtain full disclosure of the identity of any person or group obtaining the benefits of ownership of securities by reason of any contract, understanding, relationship, agreement or other arrangement.

*See City Capital Assoc. Ltd. P'ship v. Interco, Inc.*, 860 F.2d 60, 66-67 (3d Cir. 1988) (quoting H.R. Rep. No. 1711, 90th Cong., 2d Sess. (1968), *as reprinted in* 1968 U.S.C.C.A.N. 2811, 2818) (emphasis added). "Congress thus intended that disclosure be made by those expansively designated persons or groups obtaining the benefit of securities ownership through a variety of arrangements." *Interco, Inc.*, 860 F.2d at 67. Moreover, a Section 13(d) group was formed by the BVF Funds, irrespective of BVF Partners, BVF Inc. or Lampert's participation in the group formed.

**B. Plaintiff Has Plausibly Alleged That the BVF Defendants Formed a Section 13(d) Group**

*1. All of the BVF Defendants Were Part of the Section 13(d) Group*

There is no dispute that the BVF Funds had combined holdings in excess of 10% stemming from their ownership of Common Stock throughout the relevant time period. The only dispute is whether the BVF Funds' holdings should be combined. The BVF Defendants formed a group pursuant to Section 13(d) and therefore, by extension, for purposes of Section 16(b). Defendants do not dispute that the BVF Defendants acted together to buy, hold, sell or vote ONTY securities and thereby formed a Section 13(d) group. Defendants concede as much in their SEC filings with respect to ONTY. All existing case law supports that conclusion. The BVF Defendants' only real attempted defenses to this Action are in sections B.1. and B.2 of their brief, a mere two pages out of twenty-five. *See* Defs' Mot. at 19-21. In the first instance, they question whether Plaintiff can aggregate the Group's shares to pass the 10% ownership threshold and rely on a blatant misrepresentation of the one case they cite in support of their ridiculous position. In the second instance, they simply hope to confuse the Court with an argument that is completely inapplicable to the set of facts here.

9

First, as previously discussed, Section 16 looks to Section 13(d) for the purposes of determining insider status as a ten-percent beneficial owner.  Section 13(d) encompasses individual shareholders and "a group of shareholders who undertake the same activity as part of a collective effort."  *Quintel Entm't, Inc.*, 249 F.3d at 123.  "[T]he touchstone of a group within the meaning of Section 13(d) is that the members combined in furtherance of a common objective."  *Wellman v. Dickinson*, 682 F.2d 355, 363 (2d Cir. 1982) (citations omitted).  Here, multiple facts support a reasonable inference that the BVF Funds acted with BVF Partners, BVF Inc. and Lampert, for the purposes of acquiring, holding, voting or disposing of the ONTY Common Stock.

The BVF Funds are an interrelated family of investment funds run by Lampert through BVF Partners and BVF Inc.  Compl. ¶ 13, Defs' Mot. at 3.  BVF Inc. is the general partner of BVF Partners which, in turn, is the general partner of BVF and BVF2 and the investment advisor to ILL10 and MSI.  Compl. ¶ 13.  BVF Partners had voting and investment power over ONTY securities held by the BVF Funds.  Defs' Mot. at 9.  As only general partners of limited partnerships may participate in the management of partnership affairs, the Court must conclude for purposes of this motion that (1) BVF's and BVF2's transactions occurred at Lampert's, BVF Partners' and BVF Inc.'s direction, (2) so did ILL10's and MSI's, as Lampert and BVF Inc. essentially served as their discretionary Investment Advisor through BVF Partners, and (3) Oncothyreon viewed these Defendants as one unit.  *See Strauss ex rel. Servico, Inc. v. Am. Holdings*, 902 F. Supp. 475, 479-80 (S.D.N.Y. 1995) (company and limited partnership formed a Section 13(d) group where the former's president and chief executive officer and the latter's sole general partner was the same person, who controlled the investment activities of both; the corporation whose stock was traded "would look at [that person and both entities] as a unit").

BVF Partners, the BVF Funds' investment manager, had discretion over, and made all of, the Funds' investment decisions at the direction of Lampert.  Compl. ¶ 14; *see Wellman v. Dickinson*, 475 F. Supp. 783, 830-31 (S.D.N.Y. 1979), *aff'd*, 682 F.2d 355 (2d Cir. 1982), *cert. denied*, 460 U.S. 1069 (1983) (securities owned by a group of investors in discretionary accounts controlled by an investment advisor were beneficially owned by an investor group which was

10

working with the chief executive officer and chairman of the advisor); *Goldstein v. QVT Assocs. GP LLC*, 10 Civ. 2488 (HB), 2010 U.S. Dist. LEXIS 109973, at *13-15 (S.D.N.Y. Oct. 15, 2010) (allegations regarding common control of investment funds by an investment advisor with the power to direct the votes and disposition of common stock held by the investment funds withstand a motion to dismiss). *See also Donoghue v. Genomica Corp.*, 02 Civ. 0110 (LAP), 2003 U.S. Dist. LEXIS 3183, at *7-9 (S.D.N.Y. Mar. 6, 2003) (an investment manager along with two investment accounts over which the asset manager exercised investment discretion were members of a "group"); *Schaffer ex rel. Triton Energy Corp. v. Soros*, 92 Civ. 1233 (LMM), 1994 U.S. Dist. LEXIS 9886, *24-26 (S.D.N.Y. July 18, 1994) (shares held in two investment accounts over which one investment manager had investment authority were beneficially owned by a larger group of investment advisors and their advised funds with whom the advisor is working).

Furthermore, the joint reporting of beneficial ownership is further evidence of a group. The relevant Schedules 13G/A were filed jointly by BVF, BVF2, BVF Partners, ILL10, MSI, BVF Inc. and Lampert and were signed by Mark Lampert on behalf of all these entities. *See* RJN Ex. 5 at 13; RJN Ex. 6 at 15; RJN Ex. 7 at 14; RJN Ex. 10 at 14. Joint filing of a Schedule 13D is evidence of group ownership under Section 13(d). *See Quintel Entm't, Inc.*, 249 F.3d at 128.

Indeed, in submitting their joint Schedule 13Gs to the SEC, the BVF Defendants expressly affirmed beneficially owning their ONTY securities as members of a group. *See* RJN Exhs. 5, 6, 7, 10 (Item 2(a), indicating a member of group). Moreover, in Form 4s filed with the SEC on December 17, 2014, February 9, 2015, and June 27, 2016, before, during and after the period in question, among others, Defendants BVF, BVF2, BVF Partners. BVF Inc. and Lampert affirmatively represented to the SEC that each of them "is a member of a Section 13(d) group." *See, e.g.,* RJN Ex. 9 (Explanation of Responses 1). Defendants' protestations notwithstanding, it is not the choice to file the Form 4 that is dispositive of Defendants' insider status; instead, it is the affirmative representation that they are each "a member of a Section 13(d) group." *See id.*

1    Indeed, the BVF Defendants do not challenge the Complaint's allegation that they

2    formed a Section 13(d) group and in fact joined together for the purpose of buying, holding,

3    selling or voting of ONTY securities, among other securities.  In fact, the heading of section B.1.

4    of Defendants' motion is "Shares Excludable by BVF Partners Under the Investment Advisor

5    Exemption are Likewise Excludable by **the Other BVF Group Members** . . . ."  Defs' Mot. at

6    19 (emphasis added).  Thus, even Defendants acknowledge that they are a Section 13(d) group.

7                    2.    *The Investment Advisor Exemption Does Not Apply Here*

8    Defendants' first real attempt at a defense to this well pled Complaint is found in section

9    B.1. of their motion.  The BVF Defendants protest that the Group's aggregate holdings do not

10   exceed 10% because *shares* excludable pursuant to the Investment Advisor exemption are also

11   excludable by all other members of the group of which the investment advisor would be a

12   member.  In *Egghead.com, Inc. v. Brookhaven Capital Mgmt. Co.*, 340 F.3d 79 (2d Cir. 2003),

13   the only case cited by Defendants in support of this argument, the court excluded the holdings of

14   a qualifying investment adviser from being counted toward the 10% threshold by unrelated

15   group members who had no connection to the shares in question except through establishing the

16   investment advisor as a group member. The BVF Defendants' sleight of hand occurs when they

17   attempt to broaden that holding by distorting *Egghead.com* and ask the Court to apply that

18   holding to the BVF Funds.  The BVF Funds, under SEC Rule 16a-1(a)(2) (discussed later) and

19   established case law, unquestioningly beneficially own the ONTY shares they bought.  They also

20   share investment and voting control with BVF Partners.

21   This argument has been tried and soundly rejected before.  Defendants tellingly cite a few

22   lines from the case and do not discuss the facts of the case or its application to our facts.  In

23   *Egghead.com* the plaintiff was attempting to recover short-swing profits from a group of

24   unrelated investors in Egghead.com securities.  The court was addressing whether an entity

25   exempt by virtue of being an investment adviser loses the exemption if it became a member of a

26   group with non-exempt members.  In fact, Senior District Court Judge Charles S Haight, Jr. of

27   the Southern District of New York, whose decision was appealed in *Egghead.com*, rejected the

28   argument Defendants make here.  Judge Haight was very clear that Rule 16a-1(a)(1) "does not

12

exempt customers of registered investment advisers or entities managed by investment advisers."

*Egghead.com, Inc. v. Brookhaven Capital Management Co., Ltd.*, 194 F. Supp. 2d 232, 246

(S.D.N.Y. 2002), *aff'd*, 340 F.3d 79 (2d Cir. 2003).

Recently, in *Greenberg v. Hudson Bay Master Fund Ltd.*, 14cv5226 (DLC), 2015 U.S.

Dist. LEXIS 62236 (S.D.N.Y. May 12, 2015), a defendant attempted the same argument as the

BVF Defendants and relied on the very same single case.  In denying the motion, Judge Cote

stated that:

> In support of the motion to dismiss, the Defendants primarily rely on
> *Egghead.Com, Inc. v. Brookhaven Capital Mgmt. Co.*, 340 F.3d 79 (2d Cir. 2003),
> for the proposition that securities held by an investment adviser may not be used
> in calculating the beneficial ownership of a group.  *Id.* at 84-85.  It did not purport
> to answer the question of whether a client who retains an economic interest in the
> securities remains the beneficial owner of securities despite delegations to its
> investment advisor.

*Greenberg*, 2015 U.S. Dist. LEXIS 62236 at *22-23.  Various defendants have made this very

argument in different guises for years only to have them rejected by every court that has heard

them.  Specifically, they have argued that, when trading entities such as limited partnerships,

limited liability corporations, and others delegate all of their voting and dispositive control to an

investment adviser, they no longer retain beneficial ownership of the shares and those shares

cannot be counted toward the 10% ownership requirement for any purported group member.

Similarly, the BVF Defendants are arguing here that once an investment adviser is invoked the

investing entity is completely divested of beneficial ownership.  That position has been roundly

rejected time and time again.  As stated in a leading treatise on Section 16,

> We agree that a limited partnership should be deemed the beneficial owner of its
> portfolio of securities for purposes of the ten percent owner calculation. The fact
> that only natural persons can make voting and investment decisions for the entity
> does not mean that the entity itself is not a beneficial owner. By the same token,
> attribution of beneficial ownership to the entity does not mean that the individuals
> who make voting or investment decisions on behalf of the entity are not also
> beneficial owners of the securities.

Peter J. Romeo & Alan L. Dye, Section 16 Treatise and Reporting Guide 134-35 (§ 2.03[5][f])

(3d ed. 2008).  *See also Huppe v. WPCS Int'l Inc.*, 670 F.3d 214, 221-22 (2d Cir. 2012) (limited

partnerships that vested exclusive management and control of the partnerships' investment

decisions to their respective general partners, which in turn delegated that power over

investments to two individuals were "beneficial owners" for § 16(b) purposes and thus subject to disgorgement); *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 51-52 (2d Cir. N.Y. 2012) (limited partnership's general partner has the authority to delegate its power to manage and control to an investment manager; both are "beneficial owners" for § 16(b) purposes and therefore subject to disgorgement of the profits realized); *Greenberg*, 2015 U.S. Dist. LEXIS 62236, at *21-22 (where the investment funds report in the 13G filings as the beneficial owner of the securities, plaintiff has alleged sufficient facts to plead that the fund was the beneficial owner of the securities held by the adviser).

The BVF Defendants take an "either-or" approach to beneficial ownership and ignore the fact that both the client and the investment adviser can be beneficial owners.  Here, the BVF Funds shared voting and dispositive power over the Common Stock and the Preferred Stock with their investment advisers.  The clients and their advisers are both beneficial owners. Accordingly, they are all subject to Section 16(b).  In any event, even if the Court were to find that the investment advisor exemption applies to BVF Partners, BVF Inc. and Lampert, there is no doubt that Plaintiff has adequately alleged a "group" consisting of the other BVF Defendants, or the BVF Funds.

### 3.   Rule 16a-1(a)(1) Exempts "Institutions" or "Persons," Not Shares

Moreover, Rule 16a-1(a)(1) itself makes this clear as it exempts institutions, not shares. Shares which have shared beneficial ownership may not be counted toward the 10% of one reporting person but may on behalf of the other.  The first rule of statutory interpretation is to begin with the ordinary meaning of its language.  Where the statutory language is plain and unambiguous, further inquiry is not required.  *See Preap v. Johnson,* No. 14-16326, 2016 U.S. App. LEXIS 14271, at *16 (9th Cir. Aug. 4, 2016).

Rule 16a-1(a)(1)(v) states:

(a) The term beneficial owner shall have the following applications:

(1) Solely for purposes of determining whether a person is a beneficial owner of more than ten percent of any class of equity securities registered pursuant to section 12 of the Act, the term "beneficial owner" shall mean any person who is deemed a beneficial owner pursuant to section 13(d) of

the Act and the rules thereunder; **provided, however, that the following institutions or persons shall not be deemed the beneficial owner of securities of such class held for the benefit of third parties or in customer or fiduciary accounts in the ordinary course of business** (or in the case of an employee benefit plan specified in paragraph (a)(1)(vi) of this section, of securities of such class allocated to plan participants where participants have voting power) as long as such shares are acquired by such institutions or persons without the purpose or effect of changing or influencing control of the issuer or engaging in any arrangement subject to Rule 13d-3(b) (§ 240.13d-3(b)):

[ . . . ]

(v) **Any person registered as an investment adviser** under Section 203 of the Investment Advisers Act of 1940 (15 U.S.C. 80b-3) or under the laws of any state; Emphasis added.

17 C.F.R. § 240.16a-1(a)(1)(v) (emphasis added).  The BVF Funds are not registered investment advisors and cannot avail themselves of that Rule 16a-1(a)(1)(v).  The Rule is very clear that the investment adviser exemption, or any other exemption pursuant to the Rule, applies to the *institution* or *person* and not a blanket exclusion of the shares held for the benefit of third parties.  This makes perfect sense because the investment adviser may not be deemed the beneficial owners for calculating 10% ownership if they are merely holding securities for others.  However, they should be counted for beneficial ownership purposes by the third party entity or person on whose behalf the investment adviser is holding the securities.  The BVF Defendants reported the beneficial ownership of Common Stock and Preferred Stock owned by each of the BVF Funds as it was the BVF Funds who had the pecuniary interest and actually expended funds, acquired, exchanged or sold the Preferred Stock and Common Stock.

Thus, the BVF Funds, as limited partnerships or limited liability corporations formed for the purpose of acquiring, holding, or disposing of securities of ONTY common stock, among others, is a "beneficial owner" by statutory definition within the meaning of Section 13(d) and therefore, is deemed a "beneficial owner" within the meaning of Section 16 for the purpose of determining insider status and the BVF Defendants as a group exceeded the 10% ownership threshold.

### 4. *The Conversion Caps Did Not Prevent the BVF Defendants from Forming a Section 13(d) Group*

Defendants contend that the "conversion caps" in the Preferred Stock foreclose the BVF Defendants from reaching 10% ownership **based on the underlying common stock**. *See* Defs' Mot. at 20-21. Defendants argue against counting the underlying shares of the convertible securities toward the 10 % ownership threshold. However, Plaintiff did no such thing. Plaintiff did not allege that the common stock underlying the Preferred Stock had anything to do with the BVF Defendants achieving insider status. Rather, Plaintiff alleged that the BVF Funds surpassed the 10% ownership requirement by virtue of aggregating their beneficial ownership of ONTY Common Stock. The shares underlying the Preferred Stock may be counted as purchases or sales to be matched for profit recovery purposes and are irrelevant to the 10% ownership calculation.

Plaintiff alleged that the SC 13G/A filed with the SEC, as of February 13, 2015, reported the following beneficial ownership of ONTY Common Stock: BVF - 6,362,683 shares; BVF2 - 3,298,293 shares; ILL10 - 1,772,893 shares; and MSI - 2,328,391 shares. Compl. ¶ 16. Collectively, the BVF Entities owned 13,762,260 shares of Common Stock, or 15% of the outstanding Common Stock of ONTY. *Id.* In reporting the number of Common Stock shares beneficially owned, the BVF Defendants specifically excluded from the calculation shares of Common Stock underlying derivative securities subject to conversion caps. *See* RJN Ex. 5. To wit, in reporting the 6,362,683 shares owned by BVF, Defendants inserted a footnote stating:

> (1) Excludes 2,288,698 shares of Common Stock issuable upon the exercise of certain warrants. See Item 4(a) for a full description of the Reporting Person's beneficial ownership. Pursuant to the terms of the warrants, the Reporting Person may not acquire shares of common stock upon exercise of the warrants to the extent that, upon exercise, the number of shares of common stock beneficially owned by the Reporting Persons would exceed 9.999% of the issued and outstanding shares of common stock of the Issuer. Since the Reporting Persons, in the aggregate beneficially own in excess of 9.999%, the shares described in this footnote are excluded from the table above.

*Id.* at 2. The same footnote was inserted for each of the BVF Funds modifying only the number of shares of Common Stock to be excluded from the calculation. *Id.* at 3-8. Nonetheless, after excluding all shares of Common Stock subject to a conversion cap, the BVF Defendants still

reported beneficially owning 15% of ONTY's outstanding Common Stock.  Similarly, in the May 18, 2015 Schedule 13G/A cited in ¶ 17 of the Complaint, Defendants reported owning 10.3% of ONTY outstanding Common Stock and represent that:

> As of May 18, 2015, since the Reporting Persons in the aggregate own in excess of 9.999%, **the shares described herein as being beneficially owned by the Reporting Persons exclude the shares of Common Stock underlying the Warrants and the shares of Common Stock underlying Series C, B and A Convertible Preferred Stock.**

RJN Ex. 7 at 11 (Item 4.(a)) (emphasis added).

The conversion caps in our case did not prevent the BVF Defendants from achieving 10% ownership status; rather, they merely prevented the BVF Defendants from converting its Preferred Stock holdings to the extent such conversion would cause the BVF Defendants to exceed greater than 10% beneficial ownership.  Practically, the conversion caps prevented Defendants from converting any of their Preferred Stock for so long as they owned more than 10% of ONTY's Common Stock exclusive of any derivative securities.  Defendants attempt to confuse the Court by arguing that, once the BVF Defendants own some ONTY securities with a "conversion cap", they can never achieve 10% ownership status.  The only case cited by Defendants, *Decker v. Advantage Fund Ltd.*, 362 F.3d 593 (9th Cir. 2004), does not hold that investors who own convertible securities with a conversion cap can never be 10% beneficial owners.  Rather, it says that, when convertible securities contain a proper conversion cap, the underlying securities cannot be counted toward 10% owner status.  *See id.* at 595 (noting that the defendant purchased a certain amount of stock subject to a conversion cap, but giving no indication that the defendant owned any other relevant securities that would take them over the 10% threshold).  Here, Plaintiff is not relying on the Common Stock underlying the Preferred Stock to allege the BVF Defendants' insider status.

**II.**   **Defendants Made Matchable Purchases and Sales Pursuant to Section 16(b)**

    **A.**   **The Complaint Alleges Matchable Purchases and Sales Pursuant to Section 16(b)**

Defendants argue that Plaintiff has not matched purchases and sales within a six-month period for Section 16(b) purposes.  Defs' Mot. at 23.  However, Plaintiff has made "a short and

17

plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a).  Notably, Defendants do not deny that they made matchable sales.  Instead, Defendants challenge the specificity of the allegations even though Defendants are on notice of the sales that are at issue in this case.  However, while Plaintiff has alleged purchases with specificity, the specific details of Defendants' sales have not been disclosed in any SEC filings and are, therefore, at this time unknowable to Plaintiff.  In the Complaint, Plaintiff alleged that the BVF Entities purchased BVF Common Stock through their acquisition of Series B Convertible Preferred Stock in February 2015 and of Series C Convertible Preferred Stock in May 2015. Compl. ¶¶ 18-23.  For Section 16(b) purposes, these acquisitions were deemed to be purchases of the underlying Common Stock of Oncothyreon.  Compl. ¶¶ 19, 20, 22.  Further, Plaintiff alleged that the BVF Entities sold Common Stock.  In particular, Defendants reported in the February 13, 2015 Schedule 13G/A that they collectively owned 13,762,260 Shares of Common Stock, while their May 18, 2015 Schedule 13G/A reported that they collectively owned 9,754,178 Shares of Common Stock.  Compl. ¶¶ 25-26.

Accordingly, the BVF Entities had to have sold at least 4,008,082 shares of Common Stock during that time period.  Compl. ¶ 27.  Specifically, Plaintiff alleged BVF sold at least 3,028,633 Shares of Common Stock, BVF2 sold at least 374,889 Shares of Common Stock, ILL10 sold at least 1,148,374 shares of Common Stock, and MSI sold at least 789,519 Shares of Common Stock.  *Id.*  At the pleading stage, these allegations are sufficient to demonstrate purchases and sales for 16(b) purposes.  Defendants' argument that Plaintiff is somehow required to identify "the number of shares sold or share price realized in **any particular sale**", Defs' Mot. at 22 (emphasis added), has been rejected by this and other courts.  *See Greenfield v. Criterion Capital Mgmt., LLC*, No. 15-cv-03583, 2016 U.S. Dist. LEXIS 86907, at \*31-32 (N.D. Cal. July 5, 2016) (allegations of specific purchases matching specific sales were not necessary for 16(b) purposes where the plaintiff alleged purchases and sales of the relevant securities over a five to six month time period); *Greenberg*, 2015 U.S. Dist. LEXIS 62236, at \*23-24 (allegations of issuance of replacement notes and conversion of shares at elevated prices within a several month

1   timeframe were sufficient allegations of a purchase and sale of securities for 16(b) purposes

2   despite a lack of allegations concerning specific purchase and sale dates).

3          The Rule 8(a) plausibility standard "is not intended to be an onerous burden, as plaintiffs

4   need only allege facts sufficient in order to 'nudge[ ] their claims across the line from

5   conceivable to plausible.'"  *Intesa Sanpaolo, S.p.A. v. Credit Agricole Corporate & Inv. Bank*,

6   No. 12 Civ. 2683 (RWS), 2013 U.S. Dist. LEXIS 129763, at *4-5 (S.D.N.Y. Aug. 31, 2013)

7   (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In the context of a Section

8   16(b) action, there is no requirement to allege precise purchases and sales.  Thus, a complaint

9   pleading the general parameters of ownership, purchases and sales is sufficient to state a claim

10  under Section 16(b) based upon the *Twombly* standard.  *See Klawonn v. YA Global Invs.*, L.P.,

11  No. 10 Civ. 2108 (SRC), 2011 U.S. Dist. LEXIS 88535 (D.N.J. Aug. 10, 2011); *accord*

12  *Donoghue v. Golden State Bancorp, Inc.*, 02 Civ. 2404 (TPG), 2003 U.S. Dist. LEXIS 17233, at

13  *3-4 (S.D.N.Y. Sept. 30, 2003) (sustaining the first claim for relief notwithstanding the failure to

14  specify either a price for the relevant sales or the amount of profit realized).

15         Defendants once again distort the cases they cite to pronounce some legal holding the

16  cases do not contain.  In *Chechele v. Morgan Stanley*, 896 F. Supp. 2d 297, 304 (S.D.N.Y. 2012)

17  the plaintiff asserted two claims for relief.  The first well pled section 16(b) cause of action was

18  dismissed on statute of limitations grounds.  It was the complaint's second claim for relief that

19  asserted "that the Morgan Stanley Defendants **may** have engaged in other short-swing

20  transactions" (emphasis added).  The plaintiff's second claim for relief was a catch-all alleging

21  no specifics at all.  Similarly, in *Chechele v. Hayne*, No. 2:11-0379, 2011 WL 2519522 (E.D. Pa.

22  June 20, 2011), it was the second claim for relief filed as "a precaution against possible errors of

23  detail attributable to gaps or inaccuracies in the public record" that the court dismissed because

24  "it is unclear what cause of action Plaintiff seeks to assert."  That is hardly the circumstance here

25  where Plaintiff has alleged the specific details of Defendants trading in ONTY securities, save

26  for the dates and prices of Defendants' sales, which have not been disclosed in any SEC filings

27  and are, therefore, at this time unknowable to Plaintiff.  However, based upon the limited facts

28  publicly available, Plaintiff adequately alleged that Defendants sold over 4,000,000 shares of

Common Stock between February 13, 2015 and May 18, 2015 (Compl. ¶¶25-27) and that prices fluctuated in a manner allowing Defendants to earn short-swing profits from corresponding purchases in ONTY securities.  Compl. ¶27.

### B. The Acquisition of the Underlying Shares of Common Stock Is a Purchase Even If Not for Determining 10% Beneficial Ownership Status

Defendants argue that Plaintiff has not alleged any plausible matchable purchases under Section 16(b).  In support of this argument, Defendants do not cite any case law but rather attempt to confuse the Court by citing to Rules 16a-1(a)(1) and 13d-3(d)(1)(i) – two rules that have zero to do with determining beneficial ownership for determining liability and matchable transactions under Section 16(b).  Defendants attempt to confuse the two definitions of beneficial ownership contained in Rule 16a-1.  Rule 16a-1(a)(1) discusses beneficial ownership for determining 10% ownership status and Rule 16a-1(a)(2) defines beneficial ownership for all other purposes.

As explained in *Feder*, 220 F.3d at 29:

> Rule 16a-1(a)(1) . . . provides the definition of beneficial owner that "is used only to determine [insider] status as a ten percent holder." Exchange Act Release No. 34-28869, 56 Fed. Reg. at 7244 (using standards set forth in Section 13(d) of Exchange Act); see also [Ownership Reports and Trading by Officers, Directors and Principal Stockholders,] Exchange Act Release No. 34-26333, 53 Fed. Reg. [49997,] 50001 [(Dec. 13, 1998)] (explaining that analysis of beneficial owner for purposes of ascertaining who is ten-percent holder turns on person's potential for control so that proposed new rule relies on Section 13(d) for deciding who is ten-percent holder).  "**Once ten-percent status — or, of course, status as an officer or director — is determined, the definition of beneficial owner provided by Rule 16a-1(a)(2) comes into play for purposes of the reporting and short-swing profit provisions of Section 16.**"

*Feder*, 220 F.3d at 33-34 (emphasis added); *see also Huppe*, 670 F.3d at 221.  Once beneficial ownership is determined, Rule 16a-1(a)(1) and Section 13d and its Rules are no longer relevant to the Section 16(b) analysis.

Rule 16a-1(a)(2) applies for purposes of determining the extent of liability for any short-swing profits obtained in violation of Section 16(b).  *See Feder*, 220 F.3d at 34.  Rule 16a-1(a)(2) provides that a "beneficial owner", other than for purposes of determining ten percent beneficial ownership, "shall mean any person who, directly or indirectly, through any contract,

1  arrangement, understanding, relationship or otherwise, has or shares a direct or indirect

2  pecuniary interest in the equity securities . . . ." 17 C.F.R. § 240.16a-1(a)(2) (2016).

3         Unlike paragraph (1) of the Rule discussed above, which draws upon the definition in

4  Section 13(d) solely for purposes of determining whether a person is a beneficial owner of more

5  than ten percent of any class of securities, paragraph (2) does not reference Section 13(d) and,

6  therefore, the definitions contained in Section 3 of the Exchange Act apply. In particular,

7  Section 3(a)(13) provides that "[t]he terms 'buy' and 'purchase' each include any contract  to

8  buy, purchase, or otherwise acquire." 15 U.S.C. § 78c(a)(13) (2016). For Section 16(b)

9  purposes, acquiring a derivative security that gives the holder the option to purchase shares at a

10 fixed price or to convert into shares at a fixed price is treated as equivalent to purchasing the

11 shares directly. *Analytical Surveys, Inc.*, 684 F.3d at 48-49. This transaction was a purchase of

12 Common Stock because Rule 16b-6(a) of the Exchange Act promulgated by the SEC provides

13 that "[t]he establishment of or increase in a call equivalent position . . . shall be deemed a

14 purchase of the underlying security for purposes of section 16(b) of the Act . . . ." 17 C.F.R. §

15 240.16b-6(a) (2016). A "call equivalent position" is "a derivative security position that increases

16 in value as the value of the underlying equity increases, including, but not limited to, a long

17 convertible security . . . ." 17 C.F.R. § 240.16a-1(b).

18        A "derivative security" is, in turn, defined as "any option, warrant, convertible security,

19 stock appreciation right . . , or similar securities with a value derived from the value of an equity

20 security . . . ." 17 C.F.R. § 240.16a- 1(c). The SEC's interpretation of its rules treats the two

21 forms of securities, derivative and common, identically. The SEC emphasized the "functional

22 equivalence of derivative securities and their underlying equity securities for section 16

23 purposes." Ownership Reports and Trading by Officers, Directors and Principal Security

24 Holders, Exchange Act Release No. 34-28,869, 56 Fed. Reg. 7242, 7248 (Feb. 21, 1991).

25 Indeed, a primary justification for the 1991 rules was to "equate[ ] ownership of the derivative

26 security to ownership of the underlying equity security." *Id*. at 7249. More directly, the SEC

27 specifically explained that a "derivative security" is reportable upon acquisition, "whether or not

28

---

21

the derivative security is presently exercisable." *Id*. at 7252; *Strom v. United States*, 641 F.3d 1051, 1063 (9th Cir. 2010).

The Preferred Stock were "derivative securit[ies]" because they were securities convertible into, and with a value derived from, the value of the Common Stock, which is an "equity security" within the meaning of Section 16(b). *See* Ownership Reports and Trading by Officers, Directors and Principal Security Holders, Exchange Act Release No. 28,869, 1991 WL 292000 ("SEC 1991 Release") at *17 (Feb. 8, 1991). The conversion rights of the Preferred constituted a "call equivalent position" because the value of the Preferred Stock increased in tandem with the value of the underlying Common Stock into which the Preferred Stock was convertible. *See, e.g., Magma Power Co. v. Dow Chem. Co.*, 136 F.3d 316, 321 n.2 (2d Cir. 1998) (citing 3C Harold S. Bloomenthal and Samuel Wolff, *Securities and Federal Corporate Law*, § 10.11 at 10.73 (1997)). *See also* SEC 1991 Release, at *17 ("A person owning a call option would benefit from an increase in the value of the underlying security . . . ."). The underlying philosophy of this regulatory structure is that "[b]y equating ownership of the derivative security to ownership of the underlying equity security, opportunities for evasion of Section 16 are minimized." SEC 1991 Release, at *12.

As alleged, the BVF Defendants purchased $2 million of Series B Preferred Stock convertible into common stock at $1.50 per share. Compl. ¶ 18. Under Rule 16b-6(a), this is an acquisition of 1,333,333 shares of Common Stock at $1.50 per share. Similarly, Plaintiff alleged the BVF Defendants acquired an additional 4,000 shares of Series B Preferred Stock convertible into common stock at $1.50 per share. Compl. ¶ 20. Under Rule 16b-6(a) this is an acquisition of 4,000,000 shares of Common Stock at $1.50 per share.

Finally, Plaintiff alleged that the BVF Defendants exchanged 7,500,000 shares of Common Stock previously purchased by BVF for 7,500 shares of Series C Convertible Preferred Stock. Compl. ¶ 21. The conversion price of the Series C Convertible Preferred Stock was $1.48 per share. *Id.* Under Rule 16b-6(a), this was an acquisition of 7,500,000 shares of Common Stock by the BVF Defendants for $1.48 per share.

1    These Section 16(b) purchases are matchable with Defendants' sales of Common Stock

2    within a six month period and any profits realized must be disgorged to the Company.

3                                    **CONCLUSION**

4    For the reasons set forth herein, Defendants' motions to dismiss should be denied.

5    Dated: August 26, 2016

6                                    ABRAHAM, FRUCHTER & TWERSKY, LLP

7                                    _____/s/ Cassandra Porsch_____
8                                    Cassandra Porsch (admitted *pro hac vice*)
                                     Jack G. Fruchter (to be admitted *pro hac vice*)
9                                    One Penn Plaza, Suite 2805
                                     New York, NY 10119
10                                   Tel:    (212) 279-5050
                                     Fax:    (212) 279-3655
11                                   *jfruchter@aftlaw.com*
                                     *cporsch@aftlaw.com*
12
                                     Ian D. Berg (Bar No. 263586)
13                                   Takeo A. Kellar (Bar No. 234470)
                                     11622 El Camino Real, Suite 100
14                                   San Diego, CA 92130
                                     Tel:    (858) 792-3448
15                                   Fax:    (858) 792-3449
                                     *iberg@aftlaw.com*
16                                   *tkellar@aftlaw.com*

17                                   **Attorneys for Plaintiff Brian B. Sand &**
                                     **Zachary B. Sand Joint Trust**

18

19

20

21

22

23

24

25

26

27

28