UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN B. SAND & ZACHARY B. SAND JOINT TRUST,<br><br>          Plaintiff,<br><br>     v.<br><br>BIOTECHNOLOGY VALUE FUND, L.P., et al.,<br><br>          Defendants. | Case No. 16-cv-01313-RS<br><br>**ORDER GRANTING MOTION TO DISMISS, WITH LEAVE TO AMEND** |

I. INTRODUCTION

This is an action under Section 16(b) of the Securities and Exchange Act of 1934 for disgorgement of "short-swing profits" that plaintiff alleges defendants "may" have realized from purchases and sales of convertible preferred stock, and common stock, of Oncothyreon, Inc. Plaintiff Brian B. Sand & Zachary B. Sand Joint Trust, is a shareholder of the Company, "seeking to obtain a monetary recovery for the Company."

Defendants are Mark N. Lampert and a number of inter-related entities plaintiff contends, to one degree or another, Lampert controls. Liability in this action is predicated on, among other things, a showing that defendants collectively owned beneficially at least 10 percent of Oncothyreon, Inc.'s stock. Because plaintiff's allegations on that point are insufficient, for reasons set out below, the motion to dismiss will be granted, with leave to amend.

## II. BACKGROUND

As noted, defendants in this action are Mark N. Lampert and a number of entities with which he is involved in some capacity. Lampert is the sole officer and director of defendant BVF, Inc., which, in turn, is the general partner of defendant BVF Partners, LP.

The Oncothyreon stock in issue is owned by the remaining four defendants, described as hedge funds. They are (1) Biotechnology Value Fund, L.P. ("BV Fund 1"); (2) Biotechnology Value Fund II, L.P. ("BV Fund 2"); (3) Investment 10, L.L.C. ("I10"), and; (4) MSI BVF SPV, LLC ("MSI").[1] BVF Partners, serves as the general partner of BVF and BVF2, which both have their principal place of business in San Francisco. BVF Partners is *not* alleged to be the general partner of either I10 or MSI, which are based in Chicago and New York, respectively. Rather, as to those two entities, BVF Partners serves only as an investment advisor.

Although plaintiff refers to all defendants collectively as "the BVF entities," certain distinctions must be drawn. Accordingly, this order will hereafter refer to Lampert, BVF, Inc., and BVF Partners collectively as "BVF." The two funds for which BVF Partners serves as the general partner (BV Fund 1 and BV Fund 2) will be referred to collectively as "the BV Funds." The other two funds, (I10 and MSI) will be referred to collectively as "the Other Funds."

## III. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations are not required," a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 566 U.S. 652, 678 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

---

[1] Defendants assert that MSI's full name does *not* include "BVF," contrary to how it is listed in the complaint.

*Id*. This standard asks for "more than a sheer possibility that a defendant acted unlawfully." *Id*. The determination is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Id*.

A motion to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When evaluating such a motion, the court must accept all material allegations in the complaint as true, even if doubtful, and construe them in the light most favorable to the non-moving party. *Twombly*, 550 U.S. at 570. "[C]onclusory allegations of law and unwarranted inferences," however, "are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996); *see also Twombly*, 550 U.S. at 555 ("threadbare recitals of the elements of the claim for relief, supported by mere conclusory statements," are not taken as true).

## IV. DISCUSSION

Section 16 of the Exchange Act includes two subsections – § 16(a) and § 16(b). Section 16(a) provides that "[e]very person who is directly or indirectly the beneficial owner of more than 10 percent of any class of any equity security . . . which is registered pursuant to" § 12 of the Act, or who is "a director or an officer of the issuer of such security" must file certain statements/reports with the SEC. 15 U.S.C. § 78p(a)(1). Initial ownership statements are filed on SEC Form 3, and statements disclosing changes in beneficial ownership are filed on SEC Form 4. See 17 C.F.R. § 240.16a-3(a), (g). There is no private right of action under § 16(a) to compel the required trading reports, *see Scientex Corp. v. Kay*, 689 F.2d 879, 884 (9th Cir. 1982), and § 16(a) does not form the basis of the claims asserted here.

Under § 16(b), any profit realized by "such beneficial owner, director, or officer by reason

1  of his relationship to the issuer . . . from any purchase and sale, or any sale and purchase, of any
2  equity security of such issuer . . . within any period of less than six months . . . shall be . . .
3  recoverable by the issuer." 15 U.S.C. § 78p(b). Section 16(b) was enacted to prevent the unfair
4  use of information which may have been obtained by a beneficial owner, director, or officer by
5  reason of his relationship to the issuer. *Gollust v. Mendell*, 501 U.S. 115, 121 (1991); *see also*
6  *Dreiling v. Am. Online. Inc.*, 578 F.3d 995, 1001 (9th Cir. 2009). Section 16(b) "imposes strict
7  liability regardless of motive, including trades not actually based on inside information." *Dreiling*
8  *v. Am. Express Co.*, 458 F.3d 942, 947 (9th Cir. 2006).

9  Here, plaintiff seeks to impose liability on the theory that defendants collectively were
10 beneficial owners of more than 10 percent of Oncothyreon stock during the time period in
11 question. There is no dispute that no one defendant exceeded the 10 percent threshold. There is
12 also no dispute, at least at this juncture, that the total holdings of the BV Funds and the Other
13 Funds were above that threshold. The question is whether defendants' holdings can be aggregated
14 under the facts alleged.

15 Under SEC Rule 16a-1, 17 C.F.R. § 240.16a-1, in determining whether a person is "a
16 "beneficial owner of more than ten percent of any class of equity securities registered pursuant to
17 section 12 of the Act," the term "beneficial owner" means "any person who is deemed a beneficial
18 owner pursuant to section 13(d) of the Act and the rules thereunder." 17 C.F.R. § 240.16a-1(a)(1).
19 While a "beneficial owner" can be an individual, § 13(d) of the Act also provides that "[w]hen two
20 or more persons act as a . . . group for the purpose of acquiring, holding, or disposing of securities
21 of an issuer, such . . . group shall be deemed a 'person' for the purposes of this subsection." 15
22 U.S.C. § 78m(d)(3).

23 SEC Rule 13d-5, which was promulgated to implement and clarify section 13(d), defines
24 beneficial ownership by a "group" as follows:

> When two or more persons *agree to act together* for the purpose of
> acquiring, holding, voting or disposing of equity securities of an
> issuer, the group formed thereby shall be deemed to have acquired
> beneficial ownership, for purposes of sections 13(d) and (g) of the
> [Exchange] Act, as of the date of such agreement, of all equity

United States District Court
Northern District of California

securities of that issuer beneficially owned by any such persons.

17 C.F.R. § 240.13d-5(b)(1) (emphasis added).

Thus, the key inquiry in determining whether a group existed such that beneficial ownership could be imputed to certain shareholders is whether the parties "agree[d] to act together for the purpose of acquiring, holding, voting or disposing of" a company's securities. *See Dreiling*, 578 F.3d at 1002-03. Generally, courts have concluded that whether such an agreement existed is a question of fact. *See id* at 1003 (the agreement "may be formal or informal and may be proved by direct or circumstantial evidence"). Nevertheless, a plaintiff must still plead sufficient facts supporting such an agreement, given that "threadbare recitals of the elements of the claim for relief, supported by mere conclusory statements," are not taken as true. *Twombly*, 550 U.S. at 555.

Here, defendants insist that the shares held in the four fund's accounts cannot be aggregated because BVF is entitled to the so-called "investment advisor" and "control person" exemptions. While Rule 16a-1 defines "beneficial ownership" for purposes of § 16 by reference to § 13(d), the SEC has also exempted certain categories of institutions and persons who are not deemed to be beneficial owners even if they otherwise would be covered by § 13(d). Specifically, Rule 16a-1 provides that certain persons or entities are exempted from the category "beneficial owner of more than ten percent of any class of equity securities registered pursuant to section 12 of the Act" where the securities of such class are "held for the benefit of third parties or in customer or fiduciary accounts in the ordinary course of business" provided that "such shares are acquired by such institutions or persons without the purpose or effect of changing or influencing control of the issuer . . . ." 17 C.F.R. § 240.16a-1(a)(1) (emphasis added).

These exempted persons and entities include "[a]ny person registered as an investment adviser under Section 203 of the Investment Advisers Act of 1940 (15 U.S.C. 80b-3) or under the laws of any state"; and "[a] . . . control person, provided the aggregate amount held directly by the ... control person, and directly and indirectly by their subsidiaries or affiliates that are not persons specified in § 240.16a-1(a)(1)(i) through (x), does not exceed one percent of the securities of the subject class." 17 C.F.R. § 240.16a-1(a)(1)(iv), (vii) (emphasis added).

1    BVF has shown it is entitled to these exemptions.  Accordingly, at this point in time
2    plaintiff has not advanced a basis to impose liability against BVF (the partnership, the corporation,
3    and Lampert) and those defendants must be dismissed.  Although it is unclear how any
4    amendment could cure the issue, plaintiff will not be precluded from including the partnership, the
5    corporation, and/or Lampert as defendants in any amended complaint, if it has a good faith basis to
6    do so.

7    Defendants further argue that the remaining defendants must also be dismissed, because
8    the exemptions available to BVF also preclude aggregating the shares as among the four funds.
9    Defendants insist such a result follows from the holding in *Egghead.Com, Inc. v. Brookhaven*
10   *Capital Mgmt. Co*., 340 F.3d 79 (2d Cir. 2003). Nothing in *Egghead*, however, suggests shares
11   among multiple clients of an investment advisor cannot be aggregated when the basis for doing so
12   is something other than the mere fact that there is a shared investment advisor—e.g., if there is an
13   agreement among the clients within the meaning of Rule 13d-5.

14   That said, the present complaint does not plead sufficient facts to support the existence of
15   an agreement among the four funds—only two of which have BVF as a general partner—such that
16   they can properly be treated as a group for purposes of section 16 (b) liability.  *See Greenfield v.*
17   *Criterion Capital Mgmt., LLC*, 2016 WL 4425237, at *9 (N.D. Cal. July 5, 2016)(allegations that
18   hedge funds "acted together" as "directed" by certain individual defendants insufficient "to
19   support a plausible inference that there was an agreement in the first instance.")  Accordingly, the
20   motion to dismiss must be granted as to the BV Funds and the Other Funds as well, with leave to
21   amend.

22   Finally, defendants argue that the complaint also fails to allege matching purchases and
23   sales of securities within a six-month window to give rise to liability.  *Greenfield* is instructive on
24   this point as well, and it would not serve as an independent basis for dismissal.  *See Greenfield*,
25   2016 WL 4425237, at *10 ("While it is true that the complaint does not allege specific purchases
26   that match sales, which occurred within six months of each other, the court nevertheless finds the
27   allegations sufficient for pleading purposes.).

CONCLUSION

The motion to dismiss is granted, with leave to amend. Any amended complaint shall be filed within 20 days of the date of this order. The case management conference is continued to May 4, 2017.

**IT IS SO ORDERED**.

Dated: March 3, 2017

_____
RICHARD SEEBORG
United States District Judge