ABRAHAM, FRUCHTER
& TWERSKY, LLP
IAN D. BERG
TAKEO A. KELLAR
11622 El Camino Real, Suite 100
San Diego, CA 92130
Tel: (858) 792-3448
Fax: (858) 792-3449

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN B. SAND & ZACHARY B. SAND JOINT TRUST,<br><br>Plaintiff,<br><br>v.<br><br>BIOTECHNOLOGY VALUE FUND, L.P., BIOTECHNOLOGY VALUE FUND II, L.P., INVESTMENT 10, L.L.C., MSI BVF SPV INC., BVF PARTNERS, L.P., BVF INC., MARK N. LAMPERT, MAGNITUDE CAPITAL, LLC and ONCOTHYREON, INC.<br><br>Defendants. | Civil Action No.<br><br>**AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Brian B. Sand and Zachary B. Sand Joint Trust, by its attorneys, alleges, based upon knowledge with respect to the facts relating to it and upon information and belief with respect to all other allegations, as follows:

## INTRODUCTION

1. This action is brought pursuant to Section 16(b) of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), [15 U.S.C. 78p(b)] ("Section 16(b)") in order to recover short-swing insider trading profits realized by statutory insiders of Oncothyreon, Inc., n/k/a Cascadian Therapeutics, Inc. ("Oncothyreon" or the "Company.") This action is not punitive in nature and instead only seeks to disgorge profits earned from the subject trading. The defendants (other than Oncothyreon) are members of a group that owned 10% or more of the outstanding common stock of Oncothyreon, making them statutory insiders of Oncothyreon

within the meaning of Section 16(b). As statutory insiders who are presumed to have had access to material non-public information concerning Oncothyreon's operations and future business prospects, they are required by Section 16(b) to disgorge any profits they earn through short-swing insider trading (*i.e.*, purchases and sales within a six month period).

**PARTIES**

2. Plaintiff Brian B. Sand and Zachary B. Sand Joint Trust is a shareholder of Oncothyreon.

3. Defendant Biotechnology Value Fund, L.P. ("BVF") is a Delaware limited partnership with its principal offices at 1 Sansome Street, 30th Floor, San Francisco, California 94104.

4. Defendant Biotechnology Value Fund II, L.P. ("BVF2") is a Delaware limited partnership with its principal offices at 1 Sansome Street, 30th Floor, San Francisco, California 94104.

5. Defendant Investment 10, L.L.C. ("ILL10") is an Illinois limited liability company. According to filings with the SEC, it maintains a business address at the same location as BVF, BVF2, and BVF Partners, L.P., at 1 Sansome Street, 30th Floor, San Francisco, California 94104. It maintains a mailing address at 900 North Michigan Avenue, Suite 1100, Chicago, Illinois, 60611.[1]

6. Defendant MSI BVF[2] SPV, L.L.C. ("MSI") is a Delaware limited liability company with its principal offices c/o Magnitude Capital, L.L.C., 601 Lexington Avenue, 59th Floor, New York, New York 10022.

7. Defendant BVF Partners, L.P. ("BVF Partners") is a Delaware limited partnership with its principal offices at 1 Sansome Street, 30th Floor, San Francisco, California 94104. BVF Partners is the general partner of each of BVF and BVF2 and the investment adviser of ILL10 and MSI.

---

[1] ILL10's company profile page found in SEC EDGAR search results provides these separate business and mailing addresses.

[2] A filing search with the Delaware Department of State Division of Corporations confirms that MSI's full name contains the term "BVF."

8. Defendant BVF Inc. ("BVF Inc.") is a Delaware corporation, and is the general partner of BVF Partners. It maintains a principal office at 1 Sansome Street, 30th Floor, San Francisco, California 94104.

9. Defendant Mark N. Lampert ("Lampert") is a U.S. citizen who is the sole stockholder, president and director of BVF, Inc., as well as the Chief Executive Officer of BVF Partners.

10. Defendant Magnitude Capital, LLC ("Magnitude") is a Delaware limited liability company with its principal place of business at 601 Lexington Avenue, 59th Floor, New York, New York 10022. Magnitude is a hedge fund of which MSI is a sub-fund or a "fund of a fund."

11. BVF, BVF2, ILL10, MSI, BVF Partners, BVF Inc., Lampert and Magnitude are collectively referred to herein as the "BVF Group."

12. Defendant Oncothyreon, Inc. is a corporation formed under the laws of the State of Delaware and maintains its principal offices at 2601 Fourth Ave., Suite 500, Seattle, Washington 98121. The Company's common stock is registered with the Securities and Exchange Commission ("SEC") pursuant to Section 12 of the Exchange Act and, at all times relevant to the allegations herein, its common stock ("Common Stock") traded on the NASDAQ under the symbol ONTY. Oncothyreon is a necessary party and this action is brought by Plaintiff in order to obtain a recovery for the Company.

## JURISDICTION AND VENUE

13. Jurisdiction of this Court is proper pursuant to Section 27 of the Exchange Act [15 U.S.C. §78aa]. Venue is properly laid in this District because Defendants are located in this District and/or a substantial part of the events giving rise to the claim herein occurred in this District.

## FACTUAL ALLEGATIONS

### The Interrelated Nature of the BVF Group

14. According to "Company Overview" profiles available on Bloomberg.com, BVF Partners is a private equity firm focusing on undervalued investment opportunities in the public

biotechnology sector and investing in small-cap biotechnology companies. Bloomberg reports that BVF Partners is based in San Francisco, with an additional office in Chicago, Illinois.

15. BVF Partners is registered as an Investment Adviser with the Securities Exchange Commission ("SEC"). As such, it has filed a Form ADV with the SEC, along with a firm brochure (the "Brochure"). In the Form ADV, BVF Partners reports that it has over $1.1 billion in assets under management. Further, it has between 1-10 "Clients," none of which are individuals, and most of which are "pooled investment vehicles," with a small percentage being "corporations or other businesses."

16. The Brochure states that BVF Partners provides discretionary advisory services to private investment vehicles including three commingled limited partnerships (the "BVF Funds") and limited liability entities organized for single investors (the "Single Investor Funds") as well as to separately managed accounts (the "Managed Accounts"). Collectively, the BVF Funds, the Single Investor Funds, and the Managed Accounts are BVF Partners' "Clients." Upon information and belief, BVF and BVF2 are two of the three entities within the BVF Funds and ILL10 and MSI are two Single Investor Funds.

17. According to the Brochure, all investment decisions are made by Lampert and Matthew Perry ("Perry"), the portfolio managers for BVF Partners. The Brochure explains that in allocating investments among the Clients, BVF Partners seeks to allocate investment and trading opportunities in a "fair and reasonable manner." Thus, the purchase and sale of securities among BVF, BVF2, ILL10 and MSI are coordinated as directed by BVF Partners.

18. Further, with respect to Magnitude, according to its firm brochure filed with SEC Form ADV, it follows a "fund of funds" model where it delegates discretionary management of some of its sub-funds to third-party portfolio managers who are responsible for the portfolio management and investing of such accounts. Upon information and belief, MSI is one of these sub-funds for which Magnitude delegated portfolio management authority to BVF Partners.

**<u>BVF Partners' Business Model</u>**

19. On its website, BVF Partners touts that "BVF has strived to build concentrated, long-term investments in small-cap biotechnology companies while performing rigorous

diligence and on-going monitoring of its investments." BVF Partners' website further notes that "BVF is committed to working with its portfolio companies as partners in their successes."

20. Investors who take large stakes in specific companies and then seek to influence the direction taken by those companies are often referred to as "activist investors." Perry has been the portfolio manager for BVF Partners since 1996 and also serves on the Advisory Board of The BioExec Institute. According to the website for the BioExec Institute, members of its board "are top executives, key influencers, and other visionaries in the Life Sciences industry, many of whom shape the future of biotechnology." Mr. Perry's biography on the BioExec Institute website notes that while at BVF Partners, he "has been integrally involved in establishing the firm's reputation as one of the foremost investors in the biotechnology sector" and has been "a successful lead investor in dozens of transactions" who "has positively influenced corporate direction for over twenty years."

21. Similarly, numerous reports from financial news sources have characterized BVF Partners and other of the BVF Group as "activist investors." Specifically, a profile from Seeking Alpha on December 28, 2011 described BVF Partners as follows: "The firm pursues a shareholder activist approach, with all of their current investments in small-cap biotech stocks…overall, the firm maintains a concentrated portfolio of only twenty-two positions." A March 23, 2011 article from The Daily Deal entitled "Big Shareholder Fights Celera Deal" reported on BVF Partners' taking of a 12% stake in Celera Corp. and its subsequent opposition to Celera's planned acquisition of Quest Diagnostics. The article noted that "BVF has an activist track record." Further, a December 14, 2015 article from The Deal Pipeline entitled "Aeolus Raising $6.75M to Develop Radiation Treatment with Government," stated that "BVF [Partners] and Lampert have been known to take activist positions in biotech companies."

22. Principals of private equity funds and other activist investors often take seats on the boards of the companies in which they invest. On January 11, 2016, a press release on Nasdaq Globe Newswire announced that Lampert had been appointed to the Board of Directors (the "Board") of Oncothyreon. Specifically, it stated that "Oncothyreon has appointed two new members to its Board of Directors, Mark Lampert and Gwen Fyfe, M.D. Mr. Lampert brings

extensive biotechnology and finance experience to the board. He is the founder of *BVF Partners L.P., affiliates of which, including the Biotechnology Value Fund, L.P., have been shareholders of Oncothyreon since 2011*." (emphasis added).

23. This Board appointment appears to have been part of an activist campaign to influence the direction of the Company. In an article entitled "ONTY: Hot Stock" from December 21, 2015, Theflyonthewall.com related that the BVF Group had reported a 19.8% "activist" stake in Oncothyreon. The website further reported that "[o]n December 17, [three of the BVF Group's] representatives attended a meeting of the entire board of directors of Oncothyreon where they engaged in 'constructive discussions' regarding the company's business. On Friday December 18, in a telephone conversation from Christopher Henney, the Chairman of the Board, to Biotechnology Value Fund's Mark Lampert, the parties agreed to work collaboratively to enhance the value of the company." Similarly, a December 21, 2015 article from The Deal Pipeline titled "BVF Reveals a 20% Stake in Breast Cancer Drug Developer Oncothyreon" reported on the same meeting and quoted an Oncothyreon spokesperson explaining about members of BVF Group, "[a]s they are our largest shareholder, we are interested in their views and plan to have further discussions with them."

24. A news release on January 13, 2016 from counsel to BVF Partners, Olshan Frome Wolosky LLP, stated that:

> …Olshan client BVF Partners reached an agreement with Oncothyreon, a clinical-stage biopharmaceutical company, regarding changes to the Company's board composition and the search for a new CEO. In connection with the agreement with BVF Partners, Oncothyreon announced that its CEO has resigned and that the Company would commence a CEO search process. The agreement called for the immediate appointment of Gwen Fyfe, M.D., a highly-regarded member in the biopharmaceutical field, and BVF's founder Mark Lampert. Pursuant to the agreement, the Board established a three-member CEO search committee, which includes Mr. Lampert, to oversee and identify a new CEO. Adam Finerman and Timothy Knox with assistance from Bachar Mahmoud

represented BVF Partners *in connection with their activist campaign at Oncothyreon*.[3] (emphasis added).

25. The results of this activist campaign in changing the direction of the Company became manifest when less than six months later, on June 8, 2016, Oncothyreon announced via Globe Newswire that: "Oncothyreon Inc. (NASDAQ:ONTY), a clinical-stage biopharmaceutical company, today announced that the Company is changing its name to Cascadian Therapeutics, Inc. and will trade on the NASDAQ Global Select Market under the new ticker symbol 'CASC,' effective at market open on June 9, 2016. The new name reflects the change in the Company's focus from therapeutic vaccines to advancing targeted treatments for cancer."

26. Finally, in a prospectus supplement dated January 24, 2017 to a prospectus dated January 7, 2015 for an offering of its common stock, Oncothyreon noted the influence of BVF on its business. Specifically, it stated:

> …BVF, an affiliate of Mr. Lampert, owns approximately 14% of our outstanding common stock and approximately 33% of our outstanding securities on a fully converted basis. BVF also has the right to designate a director to replace Mr. Lampert. Accordingly, BVF may significantly influence our business decisions or corporate actions, including elections of directors, amendments to our organizations documents and approval of strategic transactions. The interests of BVF may not always coincide with the interests of other stockholders, and BVF may act in a manner that advances their best interests and not necessarily those of other stockholders.

**The BVF Group Members Were Statutory Insiders Subject to Liability Under Section 16(b)**

*The BVF Group Beneficially Owned More than 10% of the Shares*

27. Statutory insiders of a public company are subject to special reporting requirements and potential liability under Section 16(b) of the Exchange Act. Insiders include officers, directors and shareholders beneficially owning greater than 10% of the company's equity securities.

[3] The announcement is available at: http://www.olshanlaw.com/resources-mentions-BVF-Partners-Agreement-Oncothy-BoardCEO.html as of March 9, 2017.

28. Section 16(a) of the Exchange Act determines beneficial ownership by referring to the definition of "beneficial owner" under Section 13(d). Under Rule 13(d)-3, a person beneficially owns securities if he has or shares voting or investment power over the securities, including the securities that the person has the right to acquire within 60 days. Further, under SEC Rule 13d-5(b)(1), shares beneficially owned by members of a "group" may be aggregated for purposes of the 10% owner calculation. A "group" is defined under Rule 13d-5 as "two or more persons" who "agree to act together for the purpose of acquiring, holding, voting or disposing of equity securities of an issuer."

29. Here, the BVF Group beneficially owned more than 10% of Oncoythreon equity securities (the "Shares").

30. According to the SC 13G/A filed with the SEC, as of February 13, 2015 (the "February 2015 13G/A"), BVF owned 6,362,683 shares of Oncothyreon Common Stock, BVF2 owned 3,298,293 shares of Oncothyreon Common Stock, ILL10 owned 1,772,893 shares of Oncothyreon Common Stock, and MSI owned 2,328,391 shares of Oncothyreon Common Stock. Collectively, the BVF Group owned 13,762,260 shares of Common Stock, or 15% of the outstanding Common Stock of Oncothyreon.

31. The BVF Group continued to be subject to Section 16(b) throughout the relevant time period, as the BVF Group reported owning 10.3%, 15.4% and 19.8% of the outstanding Common Stock of Oncothyreon in SEC filings on May 18, 2015, August 18, 2015 and December 21, 2015, respectively. Further, as reported in a Schedule 13G/A filed with the SEC on August 18, 2015, BVF Partners, BVF Inc. and Lampert shared voting and dispositive power over the shares of Common Stock beneficially owned by BVF, BVF2, ILL10, MSI. BVF Partners, BVF Inc. and Lampert had the power to direct the vote and disposition of the Common Stock held by the BVF Group and, in fact, made all voting and investment decisions for the BVF Group.

*The BVF Group Agreed to Act Together with Respect to the Purchase, Holding, Voting or Sale of Their Oncothyreon Stock*

32. The BVF Group, directly or indirectly, agreed to act together at all relevant times as a group with respect to acquiring, holding, voting and/or disposing of the Shares. This

concerted action was demonstrated by, among other things, the interrelated nature and structure of the BVF Group. Specifically, BVF Partners is and was at all relevant times the general partner of BVF and BVF2 and the investment adviser to ILL10 and MSI. BVF Inc., in turn, is and was at all relevant times the General Partner of BVF Partners, and Lampert is and was at all relevant times the sole stockholder, officer and director of BVF, Inc. Further, MSI is and was at all relevant times a sub-fund of Magnitude, which delegated investment authority over MSI assets to BVF Partners.

33. Lampert acted in a coordinated manner on behalf of the BVF Group with respect to the Shares. For example, in a Form 8-K filed by Oncothyreon on May 13, 2015, the Company reported entry into a Securities Exchange Agreement pursuant to which BVF exchanged an aggregate of 7,500,000 shares of the Company's common stock for 7,500 shares of the Company's Series C Convertible Preferred Stock. The Securities Exchange Agreement, which was attached to this 8-K, was signed by Lampert on behalf of each of BVF, BVF2, BVF Partners, ILL10, MSI, and BVF Inc.

34. In addition, the members of the BVF Group agreed to have Lampert make investment decisions on their behalf and to allocate investments among them in Lampert's discretion. (*See supra* ¶ 17). By investing in their respective funds or vehicles, the Clients, including BVF, BVF2, ILL10, and MSI, and Magnitude as the parent fund of MSI, agreed to act together for the purpose of acquiring, holding, voting and disposing of securities as directed by BVF Partners and Lampert. Accordingly, the BVF Group formed a "group" for the purpose of 10% ownership in Oncothyreon securities as defined under SEC Rule 13d-5(b)(1), 17 C.F.R. §240.13d-5(b)(1).

**<u>The BVF Group Held a Pecuniary Interest in the Shares</u>**

35. Rule 16a-1(a)(2) provides that securities owned by a person subject to Section 16(b) liability are subject to disgorgement when the reporting person has a "pecuniary interest" in those securities. "Pecuniary interest" is defined as the opportunity, directly or indirectly, to profit or share in the profit derived from a transaction in the subject securities.

36. Here, the BVF Group had a direct or indirect "pecuniary interest" in the Shares. Specifically, BVF, BVF2, ILL10 and MSI had the opportunity to profit from purchases and sales in the Shares. Magnitude, for its part, had the opportunity to earn its portion of profits realized by its sub-fund, MSI. Further, BVF Partners had the ability to earn fees on profits from transactions in the Shares. As set forth in the Brochure, BVF Partners earns both an investment management fee and a performance-based fee. BVF Inc., as the general partner of BVF Partners, has a partnership interest in those fees earned by BVF Partners. Finally, Lampert, as sole stockholder of BVF Inc., earns the funds flowing to BVF, Inc.

*None of the BVF Group Members Are Entitled to Any Exemption from the Rules Governing the Determination of Beneficial Ownership Pursuant to Rule 16(a)(1)*

37. Rule 16a-1(a)(1) provides certain exemptions from the definition of "beneficial owner," including, under subsection (v), for registered investment advisers and (vii) for a parent holding company or control person. *However,* under the Rule, such exemptions do not apply *unless* shares "are acquired without the purpose or effect of changing or influencing control of the issuer."

38. Here, as set forth above, BVF Partners buys shares in mostly small-cap companies with the purpose of becoming an activist investor. It took that approach with respect to Oncothyreon, where it, with its affiliates, acquired over 10% ownership of Oncothyreon Shares and lobbied for changes to the strategic direction of the Company. It was successful in doing so, causing the installation of a new CEO, earning a Board seat for Lampert himself, and overseeing a name change and change in focus on the types of cancer therapies developed by the Company. Accordingly, none of the BVF Group members are entitled to either the investment advisor or the control person exemptions under Rule 16a-1(a)(1) because the Shares were acquired "with the purpose or effect of changing or influencing control of the issuer."

39. Together with the other met statutory requirements as set forth above, the BVF Group members were statutory insiders subject to the strictures of Section 16(b) with regard to disgorgement of short-swing profits.

**<u>The BVF Group Purchases and Sells Oncothyreon Common Stock</u>**

*<u>Purchases by the BVF Group</u>*

40. In its SEC Form 10-Q for the period ending September 20, 2015, Oncothyreon disclosed under "Related Party Transactions" that:

> In February 2015, the Company closed concurrent but separate underwritten offerings of 13,500,000 shares of its common stock at a price of $1.50 per share… and 1,333 shares of its Series B convertible preferred stock at a price of $1,500 per share…. *<u>In this offering, affiliates of BVF, a holder of more than 5% of the Company's outstanding common stock, purchased 1,333 shares of the Company's Series B preferred stock for an aggregate purchase price of $2.0 million.</u>*

41. This Preferred Stock was convertible into Common Stock at a price of $1.50 per share. Thus, the Preferred Stock was convertible into 1,333,333 shares of Common Stock, and the purchase of 1,333 shares of Series B Convertible Preferred Stock represents a purchase by the BVF Group of 1,333,333 Shares of Common Stock at a price of $1.50 per share. For 16(b) purposes, the purchase of the Preferred Stock, which is a derivative security, is deemed to be a purchase of the underlying Common Stock.

42. In this same Form 10-Q, Oncothyreon disclosed under "Related Party Transactions" that "[i]n February 2015…affiliates of BVF also exchanged 4,000,000 shares of common stock for 4,000 shares of Series B preferred stock." Thus, a Form 4 filed with the SEC by the BVF Group on February 9, 2015 reported that on February 5, 2015, BVF and BVF2 acquired 2,600 and 1,400 shares of Oncothyreon preferred stock, respectively. According to the Form 4, the preferred stock taken in exchange for the common stock had a conversion or exercise price of $1.50. As each share of the Series B Convertible Preferred Stock was convertible into 1,000 shares of Common Stock, this exchange represents a purchase of 4,000,000 Shares of Common Stock by the BVF Group for 16(b) purposes at a price of $1.50 per Share. BVF acquired 2,600,000 Shares of Common Stock for $1.50 per Share and BVF2 acquired 1,400,000 Shares of Common Stock for $1.50 per Share.

43. Finally, in this same Form 10-Q, Oncothyreon also disclosed under "Related Party Transactions" that: "in May 2015, the Company entered into an exchange agreement with certain affiliates of BVF to exchange 7,500,000 shares of common stock previously purchased

by BVF for 7,500 shares of Series C Convertible Preferred Stock." According to a Form 3 filed with the SEC on December 22, 2015, the conversion or exercise price of the Series C Convertible Preferred Stock was $1.48 per share. BVF, BVF2, ILL10 and MSI, respectively, acquired 3,040, 1,640, 1,240 and 1,580 (or a total of 7,500) shares of Series C Convertible Preferred Stock.

44. Thus, a Schedule 13G/A filed with the SEC by the BVF Group on May 18, 2015 reported that BVF, BVF2, ILL10 and MSI, respectively, beneficially owned 3,040,000, 1,640,000, 1,240,000 and 1,580,000 (or a total of 7,500,000) shares of Common Stock issuable upon the exercise of the Series C Convertible Preferred Stock. As each share of the Series C Convertible Preferred Stock was convertible into 1,000 shares of Common Stock, this exchange represents a purchase of 7,500,000 Shares of Common Stock by the BVF Group for 16(b) purposes at a price of $1.48 per Share.

45. Therefore, in the period between February 2015 and May 2015, the BVF Group purchased at least 11,000,000 Shares of Oncothyreon Common Stock.

*Sales by the BVF Group*

46. Within six months of the purchases alleged above, the BVF Group sold Oncothyreon Common Stock.

47. The February 2015 Schedule 13G/A reported that, collectively, the BVF Group owned 13,762,260 Shares of Oncothyreon Common Stock, or 15% of the outstanding shares of Common Stock, as follows: BVF owned 6,362,683 Shares of Oncothyreon Common Stock, BVF2 owned 3,298,293 Shares of Oncothyreon Common Stock, ILL10 owned 1,772,893 Shares of Oncothyreon Common Stock, and MSI owned 2,328,391 Shares of Oncothyreon Common Stock.

48. In a Schedule 13G/A filed on May 18, 2015, the BVF Group reported collectively owning 9,754,178 Shares of Oncothyreon Common Stock, or 10.3% of the outstanding shares of Common Stock as follows: BVF owned 3,334,050 Shares of Oncothyreon Common Stock, BVF2 owned 2,923,404 Shares of Oncothyreon Common Stock, ILL10 owned 624,519 Shares

of Oncothyreon Common Stock, and MSI owned 1,538,872 Shares of Oncothyreon Common Stock.

49. Therefore, in the period between February 13, 2015 and May 18, 2015, the BVF Group sold at least 4,008,082 Shares of Oncothyreon Common Stock as follows: BVF sold at least 3,028,633 Shares of Oncothyreon Common Stock, BVF2 sold at least 374,889 Shares of Oncothyreon Common Stock, ILL10 sold at least 1,148,374, and MSI sold at least 789,519 Shares of Oncothyreon Common Stock. The closing stock price of Oncothyreon during this time period ranged from a low of $1.41 to a high of $2.59 and Oncothyreon Common Stock traded at prices higher than $1.50 per share on 91 of the 94 trading days occurring during that time period.

50. The purchases and sales alleged above may be matched against one another using the "lowest in, highest out" method to yield profits recoverable from Defendants, to the extent of their respective pecuniary interests therein, under Section 16(b).

51. The BVF Group's failure to file Form 4s with the SEC after February 5, 2015, causes the exact number of Shares purchased and sold, and the prices per Share realized, by the BVF Group during the relevant time periods to be currently unknown. Nonetheless, given that the price of Oncothyreon Common Stock routinely traded above the $1.50 purchase price per Share, it is apparent that Defendants realized some short-swing profits from these purchases and sales that are disgorgeable to the Company. The exact amount and prices at which Shares were sold can be determined through pre-trial discovery.

52. Furthermore, there may have been additional sales within the relevant time period, as a December 21, 2015 Schedule 13D filed with the SEC by the BVF Group did not report ILL10 and MSI holding any Oncothyreon Common Stock at that time. The closing price of Oncothyreon Common Stock between May 18, 2015 and December 21, 2015 ranged from a low of $2.38 to a high of $3.82.

## BASIS FOR INFORMATION AND BELIEF

53. Plaintiff's information and belief is based on, among other things: (a) Schedules 13G/A filed by the BVF Group with the SEC on February 13, 2015, May 18, 2015, August 18, 2015; (b) Schedule 13D filed by the BVF Group with the SEC on December 21, 2015; (c) Form

10-Q filed by Oncothyreon with the SEC for the period ended September 30, 2015; (d) Form 3 filed by the BVF Group with the SEC on December 22, 2015; (e) Form ADV and attachments filed by BVF Partners with the SEC on June 10, 2016; (f) Form ADV and attachments filed by Magnitude with the SEC on January 23, 2017; (g) publicly available information on Bloomberg.com and (f) publicly available news reports and press releases.

**ALLEGATIONS AS TO DEMAND**

54. On December 28, 2015, demand for prosecution was made on the Board of Directors of Oncothyreon based on the facts alleged above (the "Demand"). On January 5, 2015, counsel for the Company responded to the Demand requesting proof of Plaintiff's stock ownership in the Company. The same day, Plaintiff's counsel provided such proof of stock ownership. In response, on January 8, 2016, counsel for the Company requested proof of Plaintiff's continuous ownership of the Company stock. On January 13, 2016, Plaintiff's counsel informed the Company's counsel that actions under Section 16(b) do not require "continuous ownership," but that nevertheless, Plaintiff had continuously owned Company stock since his initial purchase date.

55. Now, more than sixty days have passed from the date of the Demand and the Company has failed to recover the profits alleged herein or to institute a lawsuit to recover those profits.

**CLAIM FOR RELIEF**

56. As a result of the conduct set forth herein, the BVF Group is required to disgorge any profits they earn through their purchases and sales of the Shares within the time period set forth above.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against the BVF Group in an amount to be determined at trial, plus pre-judgment interest, post-judgment interest and such other and further relief as this Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

DATED: March 23, 2017

**ABRAHAM, FRUCHTER & TWERSKY LLP**

/s/ Ian D. Berg

IAN D. BERG
TAKEO A. KELLAR
11622 El Camino Real, Suite 100
San Diego, CA 92130
Tel: (858) 764-2580
Fax: (858) 764-2582

– and –

JACK G. FRUCHTER (*admitted pro hac vice)*
CASSANDRA L. PORSCH (*admitted pro hac vice)*
One Pennsylvania Plaza, Suite 2805
New York, NY 10119
Tel: (212) 279-5050
Fax: (212) 279-3655

Attorneys for Plaintiff